**UNITED STATES of America**

v.

**Raymond T. PELLEGRINI and Sebastian A. Barone.**

**Crim. No. 77–285.**

United States District Court, E. D. Pennsylvania.

Dec. 20, 1977.

Gary Tilles, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

David A. Garfunkel, Philadelphia, Pa., for defendant Pellegrini.

Robert F. Simone, Philadelphia, Pa., for defendant Barone.

## OPINION

LUONGO, District Judge.

On October 3, 1977, defendants Raymond T. Pellegrini and Sebastian A. Barone were convicted of conspiracy (18 U.S.C. § 371) and twenty counts of bank fraud (i. e., making false statements in loan applications submitted to a bank insured by the Federal Deposit Insurance Corporation, 18 U.S.C. § 1014). In addition, Pellegrini was convicted of twenty counts of embezzlement (18 U.S.C. § 656), and Barone was convicted of twenty counts of aiding and abetting that embezzlement (18 U.S.C. § 2). Post-trial motions for arrest of judgment (Fed.R.Crim.P. 34), judgment of acquittal (Fed.R.Crim.P. 29), and new trial (Fed.R. Crim.P. 33) were filed, and on November 18, 1977, I disposed of all but one of the contentions raised in those motions during proceedings in court, ruling that the motions should be denied insofar as they were based on those contentions. This opinion deals with the remaining contention made by both defendants—that they are entitled to a new trial[1] because one of the jurors at their trial had an insufficient understanding of the English language. I have concluded that the motion for a new trial based on this contention should be denied.

The juror in question is John Polowyj, Juror Number 150 in a panel selected for petit jury service during a three week period commencing September 26, 1977. On that date, Polowyj was one of thirty-eight members of that panel brought to Courtroom 16B for jury selection in this case. Voir dire was conducted by the Court by asking general questions of all of the prospective jurors and allowing each juror who had a significant answer to a question to respond individually. Counsel were given an opportunity to submit additional questions and to then challenge jurors for cause and to exercise their peremptory challenges. As a result of this procedure, Polowyj was selected as Juror No. 7 on a panel of twelve jurors and two alternates. At no time during the jury selection process did Polowyj give any indication that he did not have a complete understanding of the English language.

---

1. Federal Rule 33 provides that "[t]he court on motion of a defendant may grant a new trial to him if required in the interest of justice."

Counsel began presenting evidence on September 27. The evidence dealt extensively with a long series of financial transactions at the Central Penn National Bank. The case went to the jury at approximately 10:35 a. m. on Friday, September 30, and, after being excused for the weekend, the jury returned its verdict at approximately 3:00 p. m. on Monday, October 3. Throughout the trial, Polowyj did not disclose any failure to understand any of the proceedings.

The incident giving rise to defendants' motion occurred ten days after this trial's conclusion and in an entirely different case. Following the conclusion of this trial, Polowyj returned to the petit jury panel for further assignment. Eventually, he was selected as a juror in another criminal case, *United States v. Bisher,* Crim.No. 77–175, which was tried before Judge Broderick. At a recess in that trial, which immediately preceded Judge Broderick's charge to the jury, Polowyj approached the deputy clerk of court and asked to be excused from the jury because of his difficulty understanding all that was happening during the trial. The deputy clerk conveyed this information to Judge Broderick, who then, in the presence of counsel, called Polowyj into chambers to question him about his request. Polowyj explained his request as follows:

"Well, I, what I said, due to the fact that I was not schooled in this country and my knowledge of this technical and fancy talk is not that deep, so now I don't think I will be, you known, and besides that, I can't concentrate very well.

2. Pertinent portions of the transcript (at pp. 6–7) read as follows:
"Q So I will understand what you are saying, are you having physical difficulty now as a result of your arthritis at this moment?
A Well, when the weather like this comes I have a little bit difficult.
Q You just say a little bit?
A Yes. Well, how much can I say?
Q Are you suffering at the present time from your arthritis, at this moment?
A I could say yes, yes.
Q And is it your contention that this condition of yours is such that you might have difficulty deliberating in this case?
A I think so. I would have a difficulty to deliberate.

I have trouble with arthritis and in weather like this it unables [*sic*] me to concentrate. The arthritis is in my neck and my head, so when it comes to thinking I get, you know,—"
Transcript, Proceedings in Chambers in re John Polowyj, Juror, *United States v. Bisher, supra,* at 5–6.

In answer to questions by Judge Broderick and counsel, Polowyj repeated that his arthritic condition made it difficult to deliberate in the case and that he had difficulty understanding some of the terms used.[2] With the agreement of counsel, Judge Broderick then excused Polowyj from the case, substituting an alternate juror in his place. In discharging Polowyj, Judge Broderick commented that "I have difficulty myself understanding as to how a man could be in this courthouse three weeks and sit on another jury and come in on the last day of this trial, which is so important, and state that he has difficulty understanding." Transcript, at 9.

Defendants argue that if Polowyj was unable to fully understand the proceedings in the *Bisher* case, he also must have been unable to fully understand the proceedings in this case. They contend that the lack of full understanding by a juror entitles them to a new trial. At the least, they argue, even if the *Bisher* incident is not in itself sufficient to justify the granting of the new trial motion, it is sufficient to justify conducting a hearing to determine the extent of Polowyj's understanding of the proceedings in this case for the purpose of resolving the new trial motion.

Q Have you, up to this time, been able to understand the testimony of the witnesses?
A I did understand some, but some, some terms, I was not sure that, you know, different talk, you know.
Q Do you recall any terms that you did not understand?
A I don't recall, no, I don't particularly recall.
THE COURT: I am going to permit counsel to ask any questions. . . ..
BY [DEFENSE COUNSEL]:
Q Are you saying, Mr. Polowyj, that there was some testimony that because of your difficulty with the language you did not understand?
A Yes."

■ The parties have not called the attention of the court to any reported decision dealing with this particular type of fact situation. Generally, the courts have refused to allow inquiry into the basis for jurors' votes, particularly when the question goes to such matters as a juror's mental processes or intra-jury deliberations. Investigation may be conducted, however, into "extraneous influences" on the outcome, such as jurors' extrajudicial communications with third parties or exposure to news items about the case. *See generally Government of Virgin Islands v. Gereau,* 523 F.2d 140 (3d Cir. 1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976); *United States v. Wilson,* 175 U.S. App.D.C. 173, 176–177, 534 F.2d 375, 378–79 (1976); ABA Standards Relating to Trial by Jury, § 5.7 & Commentary thereto (Approved Draft, 1968). Polowyj's understanding of the English language—or lack thereof—is not an extraneous influence, however. The most pertinent case that I have found is *United States v. Dioguardi,* 492 F.2d 70 (2d Cir.), *cert. denied,* 419 U.S. 829, 95 S.Ct. 49, 42 L.Ed.2d 53 (Ostrer, petitioner) & 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (Dioguardi, petitioner) (1974), which dealt with an attempt to impeach a jury verdict on the basis of a juror's alleged mental incompetence. In considering that issue, the Court of Appeals stated:

> "It is well settled that only clear evidence of a juror's incompetence to understand the issues and to deliberate at the time of his service requires setting aside a verdict. And only strong evidence that it is likely that the juror suffered from such incompetence during jury service will justify an inquiry into whether such incompetence in fact did exist.
>
> .     .     .     .     .
>
> [A]bsent  .   .   .  substantial if not wholly conclusive evidence of incompetency, courts have been unwilling to subject a juror to a hearing on his mental condition merely on the allegations and

opinions of a losing party." 492 F.2d at 78, 80.

The Court asserted that this rule was based on a desire not to subject jurors to possible harassment or to increase the temptation for jury tampering. *Id.* at 79–80.

■ I agree with the Court of Appeals for the Second Circuit that the courts have an important interest in safeguarding the sanctity of a juror's verdict. I am unpersuaded that the evidence presented by defendants—the *Bisher* incident—is sufficient to justify invasion of that decisional process by subjecting Polowyj to a hearing on his understanding of the proceedings in this case. The proper time to gauge a juror's ability to comprehend is before trial, not afterward.

■ In enacting the Jury Selection and Service Act of 1968, Pub.L.No.90–274, 82 Stat. 53, Congress amended Chapter 121 of the Judicial Code (28 U.S.C. §§ 1861–1874) to provide a comprehensive set of laws with respect to selection and qualifications of jurors, and in doing so addressed the issue of a juror's ability to understand the English language. As amended, 28 U.S.C. § 1865(a) provides that qualification of a person to serve as a juror shall be determined by a designated district court judge on the basis of information provided on forms mailed to and filled out by randomly selected potential jurors.[3] Section 1865(b) provides that—

> "In making such determination the .  .  . judge .  .  . shall deem any person qualified to serve on grand and petit jurors in the district court unless he—
>
> .     .     .     .     .
>
> (2) is unable to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form .  .  .  ."

The enumerated exceptions to a juror's qualifications were intended by Congress to

---

**3.** The section also allows the judge to consider "other competent evidence" which is not specified.

be exclusive. *See* H.R.Rep.No.1076, 90th Cong., 2d Sess. 13 (1968), *reprinted in* [1968] U.S.Code Cong. & Admin.News, 1792, 1802–03. Section 1865(b)(2) makes clear that capability to understand the English language is to be gauged according to the potential juror's ability to sufficiently fill out the juror qualification form, which, under 28 U.S.C. § 1869(h), requires the potential juror to provide certain personal information and to swear to, *inter alia,* his ability to understand English. While this standard may seem to be unduly low, it has been adopted to assure that, in accordance with the federal policy articulated in 28 U.S.C. § 1861, jurors represent a fair cross section of the community. *See* ABA Standards, *supra,* Commentary to § 2.1(b), at 55. Defendants have not contended that Polowyj does not meet this standard and was incorrectly determined to be qualified. *See generally* 28 U.S.C. § 1867 (challenges to compliance with jury selection procedures).

Aside from the initial juror selection process, defendants had their chance to assess Polowyj's ability to comprehend at the voir dire. As required (*see* Fed.R.Crim.P. 24(a)), they were afforded an opportunity to propose (through the court) questions to the jury panel which had not been asked by the court. That opportunity could have been used with respect to issues of jurors' comprehensive abilities. Indeed, determination of significant characteristics of potential jurors is the very purpose of voir dire. Having had their opportunity to assess the characteristics of the potential jurors, defendants chose Polowyj to be a juror in their case. That choice should be a binding one.

I have carefully studied the transcript of the in chambers proceedings in *Bisher.* It leaves me far short of a belief that Polowyj had any significant difficulty understanding the language. First, I note that when called into chambers Polowyj placed equal, if not greater, emphasis on his health reasons for seeking to be excused as he did on his asserted difficulty in understanding English. Accepting comprehension difficulties as one of his stated reasons, however, I can only echo Judge Broderick's comment that it is difficult to understand Polowyj's extreme delay in disclosing this comprehension difficulty to the court. If he was really in the dark as to what was happening, one would expect that he would have said so much sooner. Overall, Polowyj's stated reasons for seeking to be excused provoke deep skepticism. Unfortunately, it is not unknown for a person directly faced with the task of determining another's guilt or innocence to seek to retreat from that awesome responsibility. It is not hard to accept that such a reaction occurred here. Having fully considered the *Bisher* incident, I conclude that it is not sufficiently strong evidence to warrant further inquiry into Polowyj's understanding of the proceedings during trial of his case. At the time of trial, everyone believed Polowyj to be entirely capable to serve as a juror, and what has been presented does not cast sufficient doubt upon that ability to justify or require further inquiry.

Defendants' motion for a new trial based on the contention that one of the jurors did not sufficiently understand the English language will be denied.