**William I. KINGSBURY, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 84–1731.

District of Columbia Court of Appeals.

Submitted Nov. 21, 1986.
Decided Jan. 21, 1987.

Joan F. Gauche, Washington, D.C., for appellant.

Joseph E. diGenova, U.S. Atty., Michael W. Farrell, and Jerry D. Massie, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before TERRY and ROGERS, Associate Judges, and REILLY, Senior Judge.

ROGERS, Associate Judge:

Appellant appeals his conviction of burglary in the second degree, D.C.Code § 22–1801(b) (1981), and theft in the first degree, D.C.Code §§ 22–3811, 3812(a) (1986 Supp.), on the ground he was denied his sixth amendment right to a jury trial because a juror in his trial was not a resident of the District of Columbia and therefore was unqualified to sit. Specifically, he argues that the applicable representative cross section provision, contained in 28 U.S.C. § 1861 (1982), is a critical aspect of the right to a jury trial and that any deviation from the statutory requirement is a violation of his sixth amendment right to a jury trial. We disagree and affirm.

I

The jury began its deliberations on October 25, 1984. Before it retired for the evening it sent a note to the trial judge asking whether it could find appellant Kingsbury guilty if it had a reasonable doubt about whether he had been inside the complainant's house. The next day, after the jury had begun deliberations, the trial judge and counsel began to discuss the jury note. Before a decision had been reached on the instruction to be given the jury, a representative from the Jury Commissioner's office appeared and stated in open court that juror number 4, who was presently deliberating with the entire jury, was a resident of Maryland and therefore not a qualified juror.[1] Defense counsel request-

---

1. The jury commissioner advised that "[S]omeon [sic] from the personnel office, Mrs. Simpson called and let [the Jury Commissioner's office] know that [juror number 4] was a

Maryland resident and she didn't think he should be serving, and he wasn't aware that he was a Maryland resident." The jury commissioner advised that the juror was registered to

ed a voir dire of the juror. The trial judge instead instructed the jury in response to its note of the previous day and ordered the jury to continue deliberating. The judge then ordered a short recess to allow the parties to research the juror qualification issue on the assumption that juror number 4 was a Maryland resident, and to determine whether there could be agreement to proceed with an eleven member jury.

After the recess, defense counsel again requested that juror number 4 be made available for voir dire. The trial judge denied the request, and defense counsel stated that juror number 4 was not a qualified juror. As this discussion was proceeding, the judge received a note indicating that the jury had reached a verdict. Defense counsel restated his position that juror number 4 was not qualified, and moved for mistrial. The trial judge, who had previously indicated he thought juror number 4 would have to be excluded from the jury, denied the motion. The jury returned its verdict and was polled; all jurors expressed agreement with the verdict. Afterward the trial judge permitted a brief voir dire of juror number 4, who stated that he had lived in Maryland the preceding two years, had previously lived in the District of Columbia, and that his mother continued to live in the District of Columbia. Defense counsel again moved for a mistrial, which the court denied.

## II

Appellant Kingsbury contends that the inclusion of a juror from Maryland violates the fair cross section requirement of 28 U.S.C. § 1861 (1986 Supp.), which provides that "[i]t is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community

in the district or division wherein the court convenes."[2] 28 U.S.C. § 1865(b)(1) (1986 Supp.) also provides that a person shall be qualified to serve on a grand or petit jury in the District Court unless he or she "is not a citizen of the United States eighteen years old who has resided for a period of one year within the judicial district." These sections are made applicable to the District of Columbia by D.C.Code § 11–1901 (1981), which provides that "[j]urors serving within the District of Columbia shall have the same qualifications as provided for jurors in the Federal courts." Because juror number 4 was a resident of Maryland, Kingsbury undeniably did not receive a trial before a jury drawn from the "district or division wherein the court convenes."

The relevant procedures for challenging jury composition or selection methods under the federal statute are set forth in 28 U.S.C. § 1867(a) (1986 Supp.). These procedures are made applicable to the District of Columbia by virtue of D.C.Code § 11–1902, which provides for

a single system in the District of Columbia for the selection of jurors for both Federal and District of Columbia courts. The selection system shall be that prescribed by Federal law and executed in accordance therewith as provided by the United States District Court for the District of Columbia.

Arguably, this incorporation is limited to the actual selection methods and standards, and does not extend to the procedures for challenging statutory noncompliance. This interpretation is unsupportable, however, in light of the clearly evidenced preference for uniformity of jury rights in the District of Columbia. *Cf. Sweet v. United States*, 449 A.2d 315, 325 (D.C.1982) (applying 28 U.S.C. § 1863(b)(5), which excludes attorneys, teachers, clergy, physicians, dentists,

---

vote in the District of Columbia and had a D.C. driver's license.

**2.** The sixth amendment to the Constitution states in relevant part that a defendant in a criminal prosecution "shall enjoy the right to a

... trial, by an impartial jury of the State and district where the crime shall have been committed, which district shall have been previously determined by law...."

and nurses from jury duty); *Obregon v. United States*, 423 A.2d 200, 207–09 and n. 19 (D.C.1980), *cert. denied*, 452 U.S. 918, 101 S.Ct. 3054, 69 L.Ed.2d 422 (1981). The lack of any specific District of Columbia Code provisions for challenging noncompliance also supports this conclusion. Finally, it would be anomalous to allow the defendant to raise a challenge based on specific statutory guarantees without requiring compliance with the express procedural requirements contained within that statute.

 In any event, the terms of 28 U.S.C. § 1867(a) represent sound and persuasive authority for this court to adopt. This section states that:

> In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, *whichever is earlier*, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of *substantial failure to comply* with the provisions of this title in selecting the grand or petit jury. [Emphasis supplied.]

Defendants have little basis to complain that a new trial should be granted because of a juror disqualification[3] when they had every opportunity to discover facts they consider important before the trial began.[4] *See* Super.Ct.Crim.R. 24(a).

 We hold that Kingsbury has failed to make a timely challenge to this noncompliance and has therefore waived his rights under the statute. Specifically, Kingsbury was required under 28 U.S.C. § 1867(a) to challenge the qualification of juror number 4 at the voir dire even though he did not learn of the Maryland residency until the jury had begun its deliberations. *United States v. Silverman*, 449 F.2d 1341, 1344 (2d Cir.1971) (inability to read English), *cert. denied*, 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788 (1972); *United States v. Young*, 570 F.2d 152, 153 (6th Cir.1978) (procedural requirements strictly enforced); *United States v. Webster*, 639 F.2d 174 (4th Cir.), *cert. denied*, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981). *Compare United States v. Price*, 573 F.2d 356, 361 (5th Cir.1978) (nonwaiver of challenge for cause on ground of prejudice due to jury service between voir dire and commencement of trial; statute not applicable). The seven day period in the statute applies only when the defendant knew, or should have known through the exercise of diligence, of the objectionable facts more than seven days *prior* to the voir dire.[5]

---

**3.** The inclusion of a juror who is disqualified under the statute would constitute substantial noncompliance. *See United States v. Layton*, 519 F.Supp. 946, 954 (N.D.Cal.1981) (disqualification must occur in objective manner). The instant case does not involve a procedural failure that did not lead to the inclusion of a specifically disqualified juror. *Compare United States v. Maskeny*, 609 F.2d 183 (5th Cir.1980), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980). If a challenge under 28 U.S.C. § 1867(a) succeeds on appeal, the defendant is entitled to a new trial without a showing of prejudice. *United States v. Nelson*, 718 F.2d 315 (9th Cir.1983).

**4.** "[T]hey were afforded an opportunity [at voir dire] to propose (through the court) questions to the jury panel which had not been asked by the court. Having had their opportunity to assess the characteristics of the potential jurors, defendants chose [this juror] to be a juror in their case. That choice should be a binding one." *United States v. Pellegrini*, 441 F.Supp. 1367,

1371 (E.D.Pa.1977) (juror ability to comprehend), *aff'd*, 586 F.2d 836 (3d Cir.), *cert. denied*, 439 U.S. 1050, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978).

**5.** The legislative history states that:

> the provisions of the bill are designed to reduce the possibility that such challenges will be used for dilatory purposes.
>
> First, the bill sets time limitations upon the availability of challenges. Subsections (a), (b), and (c) [of 28 U.S.C. § 1867] specify that challenges must be offered before the voir dire begins. And if the challenging party discover, or in the exercise of due diligence could have discovered, the grounds for the challenge earlier, the challenging motion must be made within 7 days of that earlier date.

H.R.Rep. No. 1076, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.Code Cong. & Admin.News 1792, 1805 (hereinafter "Legislative History"); *see also Arbuckle Broadcasters v. Rockwell International*, 513 F.Supp. 407, 410 (N.D.Tex.1980).

### III

Although Kingsbury has waived his right to challenge the substantial failure to comply with the statute, he can nonetheless rely on these same facts to challenge on constitutional grounds the failure of the trial judge to grant a mistrial. *Silverman, supra,* 449 F.2d at 1344; *United States v. Northside Realty Associates,* 510 F.Supp. 668, 678 (N.D.Ga.), *rev'd on other grounds,* 659 F.2d 590 (5th Cir.1981), *cert. denied,* 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.23d 456 (1982). The applicable constitutional standards, however, are far less favorable to his position.

 Under the sixth amendment it is well-settled that the "inclusion in the panel of a disqualified juror does not require reversal of a conviction unless there is a showing of actual prejudice." *Silverman, supra,* 449 F.2d at 1344; *see also United States v. Crockett,* 514 F.2d 64, 69 (5th Cir.1975) ("statutory disqualification of one of the jurors"). The "actual prejudice" standard refers not to the question whether there was sufficient evidence to make a different outcome likely,[6] but rather to the issue whether the defendant has effectively been denied his or her right to a jury trial. Because a residential disqualification does not create "fundamental incompetence," the government reasons, this rule should be applied even when the disqualification comes to light during the jury's deliberations rather than after the verdict. In either circumstance, the government continues, the disqualification could not reasonably "have adversely affected the challenged juror's ability to decide a case intelligently." *Silverman, supra,* 449 F.2d at 1344; *compare Khaalis v. United States,* 408 A.2d 313 (D.C.1979) (alleged mental incompetence), *cert. denied,* 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980). Thus, the government concludes, only a sterile formalism would require the court to undo an entire trial and declare a mistrial. *See United States v. Benedetti,* 587 F.2d 728, 729 (5th Cir.1979) (nondisclosure of juror relationship; some possibility of prejudice must nonetheless be shown).[7] We agree. Mere statutory ineligibility does not render a juror incapable of making an intelligent and an impartial verdict.[8]

---

6. Nonetheless, the evidence in the instant case was sufficiently strong as to assure the court of the unlikelihood that an innocent man has been wrongly convicted. *See Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). The complainant testified that after finding the front door of her home ajar, she discovered that several valuable items were missing or broken and that the upstairs rooms were in disarray. A neighbor testified that she had observed Kingsbury, whom she had known for ten years, walk to the complainant's front door and look through the mail chute. He then walked around the left corner of the house. She, and her daughter, next saw Kingsbury and another man come out of the house carrying a gray box and enter a nearby wooded area.

7. The cases on which Kingsbury relies do not support his position. In *United States v. Test,* 550 F.2d 577, 584 (10th Cir.1976), the court wrote that "Congress intended to allow some deviation from an exact demographic reflection of the community and that only 'great' or 'pronounced' disparities were to be remedied by supplementation," and in *Taylor v. Louisiana,* 419 U.S. 522, 528–30, 95 S.Ct. 692, 696–98, 42 L.Ed.2d 690 (1975), the Court stated only that the jury should be *fairly* representative of the community. (Emphasis supplied.)

8. *See* Super.Ct.Crim.R. 23(b), which provides

Juries shall be of twelve (12) but at any time before verdict the parties may stipulate in writing with the approval of the Court that the jury shall consist of any number less than twelve (12) or that a valid verdict may be returned by a jury of less than twelve (12) should the Court find it necessary to excuse one or more jurors for any just cause after trial commences. *Even absent such stipulation,* if the Court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining eleven (11) jurors. [Emphasis supplied.]

Upon verification of a residential infirmity, the trial judge could either have replaced juror number 4, upon stipulation, with an alternate juror, if one was still available, *see* Super.Ct. Crim.R. 24(c), have ordered that juror number 4 be excused and the jury continue its deliberations with eleven members, or have declared a mistrial. Nonetheless, in light of the sufficiency of eleven members, the actual prejudice standard, and the unanimity of the verdict against him, Kingsbury remains on weak ground when he argues that the unremedied residential infirmity violated his sixth amendment rights. Had

Kingsbury offers no reason to suspect possible prejudice in his case, and the voir dire indicating the juror's past and present residence "assures some substantial nexus between a juror and the community whose sense of justice the jury as a whole is expected to reflect." Legislative History, *supra* note 5, at 1796.

 Kingsbury also has failed even to establish a prima facie violation of the fair cross-section requirement. *See Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). He has not shown a "systematic exclusion" of any sort, much less of a "distinctive group." *See Green v. United States*, 304 A.2d 286 (D.C.1973); *United States v. Diggs*, 173 U.S.App.D.C. 95, 101–02, 522 F.2d 1310, 1316–17 (1975), *cert. denied*, 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976). The voir dire of juror number 4 revealed that the juror had been a resident of the District of Columbia for two years before the date of trial, that his mother resided in the District, and that he had been in the Washington, D.C. metropolitan area throughout this period. Even without these contacts

with the District of Columbia, however, the case law reveals a reduced federal concern that the jury be drawn from a particular geographical district,[9] as opposed to a particular minority group. Indeed, Congress chose a district based plan simply because it achieved a workable balance between the fair representation of various groups and a manageable system of selection. *United States v. Brady*, 579 F.2d 1121 (9th Cir. 1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979).

The mere inadvertent[10] presence on a jury of a juror who is technically, but not fundamentally, disqualified does not violate the constitutional fair cross-section requirement. While the statutory requirements governing jury selection were intended to implement the constitutional standard, *see United States v. Test*, *supra* note 7, 550 F.2d at 585, the technical ineligibility of a single juror[11] does not satisfy the relevant constitutional standards without a showing that the defendant's right to a fair and impartial jury was actually prejudiced. *Crockett*, *supra*, 514 F.2d at 69; *Silvermn*, *supra*, 449 F.2d at 1344. Accordingly, we

---

the verdict been one of acquittal and had the government attempted another prosecution, Kingsbury surely would be arguing the exact opposite position, namely the adequacy of the jury, in support of a double jeopardy claim. It is only the technical nature of the deficiency that permits the possibility of such an untenable double standard.

9. Although a defendant may challenge a scheme that systemically excludes a particular minority group, a defendant has no right to a jury that is drawn from a particular division within a district or from the whole district. *See United States v. Anderson*, 577 F.Supp. 223, 226–28 (D.Wyo.1983), *rev'd on other grounds*, 778 F.2d 602 (10th Cir.1985); *United States v. Raineri*, 521 F.Supp. 30 (W.D.Wis.1980); *United States v. Joyner*, 494 F.2d 501 (5th Cir.), *cert. denied*, 419 U.S. 995, 95 S.Ct. 308, 42 L.Ed.2d 268 (1974); *Jeffers v. United States*, 451 F.Supp. 1338 (N.D. Ind.1978). *See also United States v. DiTommaso*, 405 F.2d 385 (4th Cir.1968) (representation by postal zones is not even a factor to be considered in jury selection), *cert. denied*, 394 U.S. 934, 89 S.Ct. 1209, 22 L.Ed.2d 465 (1969).

10. The instant case does not involve a challenge to a jury selection procedure, *compare Sweet*,

*supra*, 449 A.2d 315, or to a knowing misapplication of those procedures. *See Silverman*, *supra*, 449 F.2d at 1343 (juror "inability to read and write English remained unknown to all connected with the trial until the day of the verdict"); *United States v. Hawkins*, 566 F.2d 1006 (5th Cir.) (no prejudice where clerk and codefendant conspired to stack jury in defendant's favor), *cert. denied*, 439 U.S. 848, 99 S.Ct. 150, 58 L.Ed.2d 151 (1978). Knowledge of facts that would disqualify a juror on the part of the government, the administrators, or the court would present a far different case. Indeed, a juror who lied about his or her residence would present good evidence of prejudice because the court could not be certain that the juror had not lied about other important qualifying factors, such as impartiality. The situation would be different where a juror is a District of Columbia resident at the time his or her own name is placed in the Master Jury Wheel, see *Obregon*, *supra*, 423 A.2d at 203–04 (describing the jury selection process), and, thereafter, ceases to be a District of Columbia resident when selected for actual jury service.

11. We leave for another day the issue whether a substantially larger number of nonresident jurors would constitute actual prejudice.

find no error by the trial judge in denying the motion for a mistrial,[12] and affirm.

12. A trial court will err in refusing to let defense counsel voir dire the juror prior to a return of the verdict only to the extent that defense counsel has raised grounds sufficient for the trial court to suspect a constitutional infirmity. Defense counsel in the instant case alleged only that juror number 4 was a resident of Maryland, which does not state a constitutional claim. Accordingly, while the trial court in its discretion could have taken remedial action, see supra note 8, the denial of a post-verdict voir dire was not error.