Curtis HOWARD, Appellant,

v.

UNITED STATES, Appellee.

No. 93–CF–1361.

District of Columbia Court of Appeals.

Argued May 4, 1995.

Decided Aug. 14, 1995.

Douglas Wham, appointed by this court, for appellant.

Laura Leedy Gansler, Special Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Thomas J. Tourish, Jr., and Julieanne Himelstein, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, SCHWELB, Associate Judge, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

Appellant was convicted by a jury of: (1) one count of sodomy with a minor, in violation of D.C.Code § 22–3502 (1989); and (2) one count of taking indecent liberties with a child, in violation of D.C.Code § 22–3501(a) (1989). He appeals his conviction on four grounds. First, appellant's main contention is that the trial court erred in admitting evidence of a past sexual offense involving a different complainant because this evidence was admitted for the sole purpose of showing that appellant had a predisposition to commit the charged offenses and because it was more prejudicial than probative. Second, appellant argues that the trial court abused its discretion in finding the child complainant competent to testify. Third, appellant argues that the trial court erred in denying his motion for a mistrial because during deliberations, but prior to returning a verdict, one of the jurors had moved to Virginia. Fourth, appellant argues that one of his two convictions and sentences must be vacated on merger grounds. We affirm.

## I.

Prior to trial, the trial court held a hearing to determine whether the five-year-old female complaining witness was competent to testify. After conducting an extensive inquiry, the court concluded that the witness was "intelligent and competent to testify in this case." The court's questioning reveals that the witness understood the difference between telling a "true story" and telling a "false story." Although, as stated by appellant's counsel during the hearing, the witness did not demonstrate "a firm grasp on [the] line between reality and fantasy" when discussing television characters, the court, in response to this concern, ultimately found that: "[O]nly the truth can come out of her mouth, she exudes with it. Big Bird is true to her. And if your client did something to her, that is truth to her, and she would not make it up." It is also clear from the record that the witness understood her duty to tell the truth and she was able to recall the events about which she was to testify.

At trial, the complaining witness, who is appellant's natural daughter, testified that during an overnight visit to appellant's home, while laying on a bed, appellant pulled down her panties and "kissed between [her] legs and put his ding-a-ling between [her] legs." In addition to being questioned, the complaining witness was asked to pretend that anatomically correct female and male dolls were she and appellant, respectively, and to demonstrate with the dolls what had occurred; she did so accordingly.

After hearing arguments from both parties prior to and during trial, the trial court ruled that it would allow the government to introduce evidence in its case-in-chief of a 1986 sexual offense committed by appellant with a four-year-old girl, who was the daughter of appellant's brother's girlfriend. This evidence was admitted in the form of testimony of the police officer who recorded appellant's statement in which he admitted committing the offense. The trial court explicitly stated that it was admitting the evidence solely for the purpose of showing that appellant had an "unusual preference for having sexual relations with young girls," relying upon the "unusual sexual preference" theory articulated in *Johnson v. United States,* 610 A.2d 729 (D.C.1992), and *Dyson v. United States,* 97 A.2d 135 (D.C.1953). However, the trial

court did *not* permit evidence of appellant's guilty plea or conviction for the 1986 offense, but only used this information in determining that there was clear and convincing evidence that appellant had committed the offense. Moreover, the court did *not* allow evidence that appellant admitted having gonorrhea or that the minor involved in the 1986 offense tested positive for gonorrhea, finding such evidence to be inflammatory.

Appellant's statement concerning the 1986 offense was admitted into evidence and the officer who took down the statement read it to the jury. In the statement, appellant admitted that he went into the bedroom where the child was sleeping and "pulled down [the girl's] pants and stuck [his] penis in her vagina." According to this statement, appellant had never had sex with a child prior to this incident and he did not know why he had sex with this girl—appellant specifically replied: "I don't know. It just happened." Immediately after the officer read the statement, the trial court gave the following instruction to the jury in pertinent part (which had been approved by both parties):

> You may consider this evidence only on the issue insofar as it may show that [appellant] had an unusual preference for having sexual relations with young girls.
>
> You may use that evidence for that purpose, or you may not..
>
> The law does not require you to do so, but you may use it in that manner.

The trial court gave a similar limiting instruction during final instructions.[1]

Appellant did not testify or present any witnesses. However, he did introduce into evidence medical records of the complaining witness' visit to the hospital following the incident in question. According to these records, the complaining witness tested negative for sexually transmitted diseases.[2]

During the morning of the second day of jury deliberations,[3] the deputy clerk reported to the trial court that one of the jurors needed to address the court because she had moved to Virginia during the past week. Appellant requested a continuance in order to research any potential legal consequences as a result of the juror's change of residence. The trial court, relying upon *Kingsbury v. United States,* 520 A.2d 686 (D.C.1987),[4] denied appellant's request and concluded that there was no legal impediment to the jury continuing its deliberations. After the verdict had been reached, but prior to it being announced, appellant requested a mistrial, arguing that only eleven qualified jurors remained because of the juror's change of residence during deliberations. The court denied appellant's motion.

## II.

Appellant's main contention on appeal is that the trial court erred in admitting evidence of his 1986 sexual offense because this evidence was admitted for the sole purpose of showing that appellant had an "unusual sexual preference," and thus, a predisposition to commit the charged offenses. Specifically, appellant contends that the admission of "other crimes" evidence or "prior bad acts" in sexual crime cases for the sole purpose of

1. The trial court stated in pertinent part:
 Now, there was evidence admitted in this case about conduct that happened in '86, and we instructed you that you were to consider that for a limited purpose ... [Y]ou may consider the evidence on the issue only insofar as it shows that [appellant] had an unusual preference for having sexual relations with young girls. You understand that you are not to use that for any other purpose. You are not to reason that if he did that, he did this. That you should not do. Absolutely you should not do that. You may use it for the limited purpose as I have instructed you.

2. These medical records were admitted into evidence over the government's objection. The gov-

ernment opposed the admission of the test results for gonorrhea and chlamydia stating that both diseases are acquired only through sexual intercourse and there had been no allegation of sexual intercourse in this case.

3. The jury began its deliberations on August 6, 1993. When the jury had not reached a verdict by the end of the day, the trial court continued the deliberations until August 16, 1993, due to the travel plans of one of the jurors.

4. Although the trial court could not remember the name of the case, it is clear from the record that the court was referring to the *Kingsbury* case.

showing a "lustful disposition" or "unusual sexual preference," as articulated by this court in *Dyson v. United States*, 97 A.2d 135, 137–38 (D.C.1953), is inconsistent with and cannot be reconciled with the general prohibition against, and limited exceptions to, the admission of "other crimes" evidence in this jurisdiction, as articulated in *Drew v. United States*, 118 U.S.App.D.C. 11, 15–16, 331 F.2d 85, 89–90 (1964). Appellant contends further that even if the "unusual sexual preference" exception is consistent with *Drew* and other *Drew*-type exceptions, admitting evidence of his 1986 offense was nonetheless improper because the prejudicial effect outweighed its probative value.

In *Dyson, supra*, in discussing the admissibility of "other crimes" evidence, we said:

The general rule, applicable in criminal prosecutions, is that evidence of other offenses than that for which the accused is on trial is inadmissible. In prosecutions for sexual offenses, however, there is a well established exception, the theory of which is that *as the mental disposition of the defendant at the time of the act charged is relevant, evidence that at some prior time he was similarly disposed is also relevant.*

97 A.2d at 137 (quoting *Hodge v. United States*, 75 U.S.App.D.C. 332, 126 F.2d 849 (1942)) (emphasis added by *Dyson* court) (internal quotations omitted). We stated that the most logical reason for admitting "other crimes" evidence in sexual offense cases is "to show *intent and lustful disposition* of the defendant." *Id.* (emphasis added). Moreover, "it was proper to allow proof of the

defendant's lustful and perverted state of mind" at the time of the charged offense because the government, in sexual offense cases, is required "to show that the act of the defendant was *not accidental* and that he had the necessary *criminal intent.*" *Id.* (emphasis added). In *Dyson*, we ultimately held that evidence of "similar acts with other persons" is admissible in sexual offense cases "in order to show the defendant's *intent and disposition.*" *Id.* at 138 (emphasis added).

In *Drew, supra*, the court made the following statement concerning the admissibility of "other crimes" evidence:[5]

It is a principle of long standing in our law that evidence of one crime is inadmissible to prove *disposition* [emphasis in original] to commit crime, from which the jury may infer that the defendant committed the crime charged. Since the likelihood that juries will make such an improper inference is high, courts *presume prejudice* and exclude evidence of other crimes *unless* that evidence can be *admitted for some substantial, legitimate purpose.*

118 U.S.App.D.C. at 15–16, 331 F.2d at 89–90 (emphasis added) (citations omitted). The court went on to hold that evidence of other crimes *is* admissible to show "motive," "intent," "the absence of mistake or accident," "common scheme or plan" or "identity" because "[w]hen the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value." *Id.*[6] Moreover, the court stated that: "this list is not necessarily all-inclusive. These are, however, the major exceptions."[7]

---

**5.** It is settled that decisions made by the D.C.Circuit court prior to February 1, 1971 are binding precedent and must be followed by this court. *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971).

**6.** The *Drew* exceptions for intent, motive, and absence of mistake are applicable *only* when the defendant's state of mind is a material or genuine issue in the case and not merely a formal element of the crime charged. *Pounds v. United States*, 529 A.2d 791, 795 n. 6 (D.C.1987); *see Thompson v. United States*, 546 A.2d 414, 423 (D.C.1988) (holding that "where intent is not controverted in any meaningful sense, evidence of other crimes is so prejudicial *per se*" it is inadmissible as a matter of law). The defendant's state of mind becomes an issue when he

makes it an issue by raising an affirmative defense (*i.e.*, mistake, entrapment, self-defense) *or* when he has been accused of a specific intent crime. *Pounds, supra*, 529 A.2d at 795 n. 6.

**7.** This general approach to "other crimes" evidence is rooted in the common law of many jurisdictions, and has also been adopted by the Federal Rules of Evidence. *See* McCormick on Evidence § 190 (John W. Strong ed., 4th ed. 1992) (discussing the use of "other crimes" evidence under common law and the federal rules); Christopher B. Mueller & Laird C. Kirkpatrick, Evidence §§ 4.20–4.23 (1995) (discussing the parameters and case law development of Fed. R.Evid. 404(b)); Charles E. Wagner, *Federal Rules of Evidence Case Law Commentary* 170–206

■ Reading *Dyson* and *Drew* together, it appears that the two opinions are reconcilable. However, subsequent interpretations of the *Dyson* decision do raise some questions when compared to the *Drew* decision and its progeny. This court, in *Dyson*, found that evidence of "similar acts with other persons" is admissible in sexual offense cases in order to show that the defendant's actions at the time of the charged offense were *not* done accidentally, but were done with a "criminal intent" *and* "lustful disposition." *Dyson, supra*, 97 A.2d at 137–38. That is, evidence of a defendant's prior mental disposition is relevant only to the extent that his mental disposition at the time of the crime charged is relevant, *i.e.*, presence of criminal intent, absence of mistake. *Id.* at 137. Thus, by connecting the admissibility of evidence of a prior act showing a "lustful disposition" to the absence of mistake or the presence of "criminal intent," this court's reasoning in *Dyson* appears to be in line with the Circuit court's reasoning in *Drew*, that is to say, the "lustful disposition" exception discussed in the *Dyson* decision appears to fall within, or is at least similar to, the exceptions articulated in *Drew*.

However, a number of decisions subsequent to *Dyson* apply the "lustful disposition" or "unusual sexual preference" exception [8] as permitting "other crimes" evidence for the *sole purpose* of showing that a defendant had a predisposition to commit the charged offense.[9] Thus, appellant's request to the court in its most precise form, is to clarify our holdings regarding this question. This court, however, is bound by *Dyson* and its progeny. *M.A.P v. Ryan*, 285 A.2d 310, 312 (D.C.1971); *Johnson v. United States*, 610 A.2d 729, 730 (D.C.1992) ("*Dyson* [and its progeny] is binding on us unless and until it is overruled by this court *en banc*") (citing *M.A.P., supra*).

■ We review the trial court's decision to admit "other crimes" evidence for an abuse of discretion. *Daniels v. United States*, 613 A.2d 342, 347 (D.C.1992). The two main inquiries that the trial court must make prior to admitting "other crimes" evidence are that: (1) the government has established by clear and convincing evidence that the uncharged crime occurred, and (2) the probative value of the evidence outweighs its prejudicial impact. *Id.* at 347–48 (discussing inquiry for admitting "other crimes" evidence under *Drew* ); *Roper v. United States*, 564 A.2d 726, 731 (D.C.1989) (same).[10]

In the instant case, as stated above, the trial court determined that there was clear and convincing evidence that the 1986 offense occurred because of appellant's guilty plea and subsequent conviction. Moreover, in analyzing the probative value of the 1986 offense, the trial court found that the 1986 offense was similar to the charged offenses mainly because the victims were of the same gender, close in age, and were visiting appellant "under similar circumstances." The trial court also reduced any potential prejudicial effect of admitting the evidence of the 1986 offense by not allowing the government to mention the offense in its opening statement, by not allowing into evidence appel-

---

(1994) (same). However, under the common law of a number of jurisdictions, "other crimes" evidence is also admissible "[t]o show a passion or propensity for unusual and abnormal sexual relations." McCormick on Evidence, *supra*, § 190(4).

**8.** *See Adams v. United States*, 502 A.2d 1011, 1015 (D.C.1986) (discussing the "unusual sexual preference" exception and the *Dyson* case) (see also cases cited therein).

**9.** *See, e.g., Johnson v. United States*, 610 A.2d 729, 730 n. 4 (D.C.1992) (evidence of prior similar sexual misconduct with different victim admitted solely to show "an unusual preference for having sexual relations with young girls"); *id.* at 730 ("unusual sexual preference" characterized as a *Drew*-type exception); *Pounds v. United*

*States*, 529 A.2d 791, 794 (D.C.1987) (evidence of history of sexual abuse of complainant admitted solely to show a "predisposition to gratify special desires with that particular victim"); *id.* at 795 (history of sexual abuse not *Drew* evidence but *Toliver* evidence) (citing *Toliver v. United States*, 468 A.2d 958, 960 (D.C.1983)); *Adams v. United States*, 502 A.2d 1011, 1015 (D.C.1986) (evidence of prior similar sexual misconduct with different victim admitted solely to show "criminal disposition").

**10.** The other two factors under a *Drew* inquiry are that the evidence is probative of a genuinely contested issue, falling within one of the *Drew* exceptions, and that the evidence is logically relevant to prove this issue for a reason other than propensity. *Id.*

lant's guilty plea or conviction, by not allowing any reference to gonorrhea by the government, and by giving limiting instructions to the jury immediately following the admission of the evidence and during the final instructions. The trial court did not abuse its discretion in admitting evidence of the 1986 offense.

Because *Dyson* and its progeny are binding precedent, and because the trial court did not abuse its discretion, we must conclude that the challenged evidence was properly admitted.

### III.

 We now turn our attention to appellant's other tangential contentions on appeal. First, appellant contends that the trial court abused its discretion in finding the complaining witness competent to testify. We disagree. We have clearly stated that "the determination of a witness' competence to testify lies within the sound discretion of the trial judge, and this court will not disturb the judge's factual determination unless it is plainly deficient." *Galindo v. United States,* 630 A.2d 202, 206 (D.C.1993) (affirming trial court's finding three-year-old competent to testify) (citations and internal quotations omitted). A child is considered competent to testify if (1) (s)he is able to recall the events about which (s)he is to testify, (2) (s)he understands the difference between the truth and a falsehood, and (3) (s)he appreciates the duty to tell the truth. *Id.* at 206–07 (citations omitted). It is clear from the record that the trial court did not abuse its discre-

tion in finding the complaining witness competent to testify.

 Next, appellant contends that the trial court's failure to grant his request for a mistrial was an error of "constitutional dimensions." In *Kingsbury v. United States,* 520 A.2d 686 (D.C.1987), we discussed the constitutional standards for challenging the denial of a mistrial motion where one of the twelve jurors was not a resident of the District of Columbia at *any time* during the jury selection or the trial and ultimately decided to affirm the trial court's guilty verdict. *Id.* at 687–88; 690–92. We stated that "[m]ere statutory ineligibility does not render a juror incapable of making an intelligent and an impartial verdict." *Id.* at 690.[11] Moreover, "the technical ineligibility of a single juror does not satisfy the relevant constitutional standards without a showing that the defendant's right to a fair and impartial jury was *actually prejudiced.*" *Id.* at 691.[12] Appellant does not offer any basis to suspect possible prejudice in this case, and no such basis is indicated in the record.[13]

 Appellant's final contention on appeal is that one of his two convictions and sentences must be vacated on merger grounds. Specifically, appellant argues that the offenses of sodomy on a minor, and taking indecent liberties with a minor merge because they arise from the same incident and because the statute itself, D.C.Code § 22–3501(d) (1989), makes it clear that the legislature did not intend to create two separate offenses. Based on our recent decision addressing a similar contention, there can be

---

11. In order to qualify to serve as a juror in this jurisdiction, a person is required to be a resident of the District of Columbia. D.C.Code § 11–1906(b)(1)(A) (1989). A resident of the District is a person "who has resided or has been domiciled" in the District for at least six months. D.C.Code § 11–1902(10) (1989).

12. Unlike the juror in *Kingsbury,* the juror in the instant case was eligible to serve as a juror because she was a resident of the District of Columbia at the time of the jury selection process. We need not resolve the issue of whether a juror who changes his or her residence at some point after the jury selection process becomes "technically ineligible" to serve as a juror, because such a finding would not affect the outcome of this case.

13. On appeal, appellant argues that he was not given the opportunity to show possible prejudice because the juror in question was not subjected to voir dire. Appellant concedes that he did not request to voir dire the juror, but claims that it is clear from the record that "any such request would have been futile." We disagree with appellant's characterization of the record. Since appellant did not request to voir dire the juror, we must review this issue for plain error. Appellant has failed to demonstrate that any of his "substantial rights" were affected by the lack of voir dire. *See* Super.Ct.Crim.R. 52 (b) (as well as cases cited therein).

no merger here. *See Hicks v. United States,* 658 A.2d 200 (D.C.1995) (holding that, based on the "elements" test, taking indecent liberties with a minor and enticing a minor for the purpose of taking indecent liberties are not lesser included offenses of and do not merge into assault with intent to commit sodomy where the offenses arose from the same incident; moreover, § 22–3501(d) does not support a merger of taking indecent liberties and enticement). It is clear that appellant's convictions for taking indecent liberties with a child, § 22–3501(a), and sodomy with a minor, § 22–3502, each require proof of a fact that the other does not, and therefore, do not merge in the absence of a *clear* legislative intent to the contrary. *See Byrd v. United States,* 598 A.2d 386, 389 (D.C.1991) (en banc) ("elements" test is the guide to legislative intent); *Hicks, supra,* 658 A.2d at 203 (applying the "elements" test adopted in *Byrd, supra* ).

In light of the foregoing analysis, appellant's convictions for sodomy with a minor, and taking indecent liberties with a child are

*Affirmed.*