953 P.2d 1266

**STATE of Arizona, Appellee,**

v.

**Michael Earl GARLAND, Appellant.**

**No. 1 CA–CR 97–0276.**

Court of Appeals of Arizona,
Division 1, Department C.

Feb. 12, 1998.

214

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel Criminal Appeals Section and Diane M. Ramsey, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Lawrence S. Matthew, Phoenix, for Appellant.

LANKFORD, Judge.

¶ 1 Appellant Michael Garland ("Garland") appeals the denial of his motion to sever the charges in the trial that resulted in his conviction for (1) the theft of property over $250, (2) dangerous kidnapping, (3) dangerous armed robbery, and (4) dangerous aggravated assault. We have jurisdiction over this appeal pursuant to Arizona Revised Statutes Annotated ("A.R.S.") sections 12–120.21(A)(1), 13–4031 and 13–4033(A). He received concurrent sentences of one and one-half years for the theft and thirteen and one-half years for each of the remaining convictions. Garland appeals the denial of severance of Count I from Counts II, III, and IV. Because we believe the counts were erroneously joined and because the error was harmful, we reverse the conviction and remand to the superior court for two separate proceedings.

¶ 2 Garland met a news reporter and a photographer at a local Phoenix motel while they were researching a human interest story on the motel and its patrons. They spoke with Garland, a registered guest at the motel, for approximately 45 minutes and photographed him. Around 11:30 p.m., the photographer made a comment that angered Garland, who responded by pulling a gun out of the waistband of his pants. The photographer and reporter fled, leaving a camera and tripod. The photographer saw Garland take the equipment, and a witness corroborated this.

¶ 3 The reporter and photographer later identified Garland, a black man, in court and each described him wearing a black "D.A.R.E." t-shirt and a baseball cap. The photographer recalled that the cap had a "CR" insignia on it, which he believed signified the "Colorado Rockies." The reporter first described the cap as a "sports baseball-type hat that had an insignia on it." He later said that he thought the insignia was "CR" though he could not say he was "110 percent sure" of that. He also recalled that the man had identified himself as "Mike," though the photographer thought he said "Mark." They later confirmed that the motel register listed Michael Garland as a guest.

¶ 4 About 1:00 a.m. the next morning, a motorist pulled into a parking lot in the same area and was approached by a black man wearing a black baseball cap. Pulling a gun out of the waistband of his pants, he demanded a ride. He entered the car and they drove off. He identified himself as "Mike" and told the motorist that they were "going to buy some dope." After telling the motorist to pull over, the gunman demanded the motorist's ring, watch and money. He placed the gun down and the motorist grabbed for it. A brief struggle ensued, resulting in a gunshot to the motorist's stomach. The motorist pushed the gunman out of the car and drove off, soon flagging down help. A black baseball cap with a "CR" insignia was later found in the back seat, which the motorist said was not his. Police later identified fingerprints taken from the car as Garland's.

¶ 5 At trial, the State brought the charges involving the theft of the photographic equipment and the encounter with the motorist together. The trial court denied Garland's motion to sever. The court found that joinder was proper because the incidents were of the same or similar character, and because the offenses were connected in their commission such that they could be considered part of a common scheme or plan. The court did not state what that common scheme or plan was. It also found that under Arizona Rule of Evidence 404(b), evidence of the first incident would have been admissible in a trial of the second and it recited the Rule 404(b) list of exceptions to the general rule of inadmissibility.[1]

¶ 6 Garland did not testify, but produced an alibi witness who said she had picked

---

1. Arizona Rule of Evidence 404(b) provides:
   Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity there-with. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Garland up at 10:30 p.m., ate with him, returned to the motel at 12:00 a.m. to check him out and then took him home to spend the night at her apartment.

■ ¶ 7  Joinder of offenses is governed by Arizona Rules of Criminal Procedure, Rule 13.3(a), which provides:

> Provided that each is stated in a separate count, 2 or more offenses may be joined in an indictment, information, or complaint, if they:
>
> (1) Are of the same or similar character; or
>
> (2) Are based on the same conduct or are otherwise connected together in their commission; or
>
> (3) Are alleged to have been part of a common scheme or plan.

¶ 8  Severance of joined offenses is required as a matter of right if the offenses are only joined by virtue of their same or similar nature; otherwise they may be severed at the trial court's discretion.  Rule 13.4 provides:

> (a) In General.  Whenever 2 or more offenses ... have been joined for trial, and severance ... is necessary to promote a fair determination of the guilt or innocence of any defendant ... the court may ... order such severance.
>
> (b) As of Right.  The defendant shall be entitled as of right to sever offenses joined only by virtue of Rule 13.3(a)(1).

¶ 9  We review the denial of severance for an abuse of discretion.  *State v. Hummer,* 184 Ariz. 603, 608, 911 P.2d 609, 614 (App. 1995).  We apply a two step analysis in which we first determine if the joinder and denial of severance were proper under Rules 13.3 and 13.4.  *State v. Ives,* 187 Ariz. 102, 106, 927 P.2d 762, 766 (1996).  If the charges should have been severed, then we determine whether the error requires reversal.  "[T]he denial of severance is reversible error only if the evidence of other crimes would not have been admitted at trial 'for an evidentiary purpose anyway.'"  *Id.* (citations omitted).  Therefore, if the evidence of the other acts would not have been admitted under the exceptions listed in Rule 404(b), the denial of severance must be reversed.

¶ 10  We turn first to the propriety of joinder of the offenses.  Using language from all three of the reasons for joinder given in Rule 13.3(a), the trial court found that joinder was proper.

¶ 11  The first justification for joinder, acts of the "same or similar character," is difficult to reconcile with the facts.  In fact, the State failed to even argue this in the trial.  It is only because the court found that the offenses were of the same or similar character that we address it.  In support of this finding, the court stated that in both incidents a gun had been used to take property of another.  In the first incident, Garland pulled a gun out but did not point it at the victims and stole their property only after they left.  In the second incident, Garland held the victim at gunpoint and demanded a ride and the victim's property.  The victim was then shot in a struggle over the gun.

■ ¶ 12  We do not see the presence of a gun and the taking of property as sufficient similarity of character.  These characterize many crimes without any other connection.  More importantly, even if the court had correctly joined the charges on this basis, Rule 13.4(b) made severance a matter of right to a defendant.  Thus, if this were the only basis for joinder, refusal of severance would be error.

¶ 13  We next consider whether joinder was justified under Rule 13.3(a)(2).  Though the State never argued that joinder was justified on this basis, the trial court used the language of Rule 13.3(a)(2) in its order.  It found that "the offenses are otherwise connected together in the commission that they can be considered part of a common scheme or plan."  It is not clear whether this meant that joinder was proper on both Rule 13.3(a)(2) and Rule 13.3(a)(3) grounds, or only on one or the other, but we will address both as if the court had found them to be independent bases for joinder.

■ ¶ 14  Rule 13.3(a)(2) states that joinder is allowed if the offenses show the same conduct or are otherwise connected.  The trial court mentioned only the "otherwise

connected" language. Offenses are considered otherwise connected when "the offenses arose out of a series of connected acts, and the evidence as to each count, of necessity, overlaps;" "where most of the evidence admissible in proof of one offense [is] also admissible in proof of the other;" or "where there [are] common elements of proof in the joined offenses." *State v. Martinez–Villareal,* 145 Ariz. 441, 446, 702 P.2d 670, 675 (1985) (citations omitted). In *Martinez–Villareal,* the court found that a burglary in which the defendant stole guns used to commit the subsequent homicides was sufficiently connected to join the charges.

■ ¶ 15   Here, there is no such connection. The crimes and the common elements of proof of each were independent of the other. The evidence of each count does not overlap the evidence of the other. Nor, as we explain below, is the evidence of each crime admissible as proof of the other.

¶ 16   The third reason for joinder, a "common scheme or plan" encompassing both incidents, was the sole focus of the State's argument below and is the focus of the answering brief. In the answering brief, the State contends that the common scheme or plan linking the first and second incident was a "desperate overarching criminal plan to steal anything portable and valuable to buy drugs." The allegation of a plan to steal to buy drugs was not raised in the severance proceedings, and we are not obligated to consider it. *See Weston v. State,* 8 Ariz.App. 58, 61, 442 P.2d 881, 884 (1968) (appellate court refusing to consider matters not raised below); *Leahy v. Ryan,* 20 Ariz.App. 110, 113, 510 P.2d 421, 424 (1973) (appellate court declining to address contentions not raised below). We also note that the trial court did not find an overarching criminal plan to buy drugs.

¶ 17   With no common scheme or plan clearly identified by the court, we must apply the proper standard to determine if a common scheme or plan actually existed as stated by the trial court. Arizona cases have differed on the correct definition of a common scheme or plan. Some have stated that

only proof of a "visual connection" was necessary, while others have used a much narrower definition demanding proof that the acts were actually part of a particular plan. *Ives,* 187 Ariz. at 106, 927 P.2d at 766 (citations omitted). In trial, the State argued that only a visual connection was required. It emphasized Garland's physical attributes, the baseball cap, his self-identification as "Mike," the gun, and the geographical and temporal proximity of the acts.

■ ¶ 18   In *Ives,* the Arizona Supreme Court rejected the visual connection test and adopted the narrower standard for all cases in which convictions had not become final on direct appeal or by expiration of time for direct appeal as of the date of the opinion. *Id.* at 107, 927 P.2d at 767. In *Ives,* the supreme court clearly distinguished between "a general commitment to criminality" and "a specific plan embracing the charged crime." *Id.* at 106, 927 P.2d at 766 (quoting *State v. Ramirez Enriquez,* 153 Ariz. 431, 432–33, 737 P.2d 407, 408–09 (App.1987) (citation omitted)). While the State presented evidence of visual similarities, it pointed to no evidence of any specific plan by Garland encompassing the two incidents.[2] We therefore find that the charges were improperly joined and that severance was erroneously denied. *See State v. Lee (I),* 189 Ariz. 590, 598, 944 P.2d 1204, 1212 (1997).

■ ¶ 19   Having found that severance was denied in error, we must now determine if the error warrants reversal. The error may be deemed harmless only if the evidence of each crime would have been admissible in a separate trial of the other crimes. *Ives,* 187 Ariz. at 106, 927 P.2d at 766.

■ ¶ 20   Evidence of other conduct is generally inadmissible. Ariz. R. Evid. 404(a). Such evidence is admissible only if it is offered for a proper purpose, such as one of the exceptions enumerated in Rule 404(b), and if the profferer is able to "prove *by clear and convincing evidence* that the prior bad acts were committed and that the defendant

---

**2.** While Garland is said to have mentioned an intention to buy drugs during the second incident, no evidence connects the earlier incident to such a plan.

committed the acts." *State v. Terrazas,* 189 Ariz. 580, 582, 944 P.2d 1194, 1196 (1997).

¶ 21 Though the trial court did not specify which one of the eight exceptions applied to the present facts, on appeal both parties mentioned only "identity" as the exception at issue. We note that in the trial, the State did no more than assert the admissibility of the evidence.

¶ 22 The identity exception to Rule 404 only applies if the " 'pattern and characteristics of the *crimes* [are] so unusual and distinctive as to be like a signature.' " *State v. Stuard,* 176 Ariz. 589, 597, 863 P.2d 881, 889 (1993) (citing Morris K. Udall *et al.,* Law of Evidence § 84, at 185 (3d ed.1991))(emphasis added); *State v. Jackson,* 186 Ariz. 20, 27, 918 P.2d 1038, 1045 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 527, 136 L.Ed.2d 413 (1996) (holding that the modus operandi and the circumstances of the crimes must be like a signature). " '[T]here must be similarities between the *offenses* in those important aspects "when normally there could be expected to be found differences." ' " *Stuard,* 176 Ariz. at 597, 863 P.2d at 889 (citations omitted) (emphasis added). In addition to examining similarities, the differences between crimes must also be considered. *Id.*

¶ 23 Here the similarities—two incidents on the same night in the same general area, a baseball cap, a gun tucked into the front of the assailant's pants and then pulled out, and a black man named "Mike"—do not show how the *crimes* are distinctly similar. Instead, they only show that the man or men who perpetrated the crimes were similar. The offenses were different. *Cf. State v. Roscoe,* 145 Ariz. 212, 700 P.2d 1312 (1984) (evidence of the defendant's earlier abduction and sexual attack of a young girl admitted in a case involving the same offenses against another young girl). The damage or injuries inflicted were different. *Cf. Stuard,* 176 Ariz. at 593–95, 863 P.2d at 890–92 (evidence of victims, attacks, and resultant injuries all showing striking similarities was admitted).

¶ 24 We cannot see that the similarities outlined by the trial court and by the State show that the offenses are so distinctive to be "like a signature." The evidence would not have been admissible in separate trials. Accordingly, the denial of severance is reversible error.

¶ 25 Garland also challenges the calculation of presentence credit. After review, we find that the trial court awarded the correct credit, 115 days.

¶ 26 For the foregoing reasons, we reverse the trial court's denial of severance and remand to the trial court for further proceedings.

FIDEL, P.J., and GRANT, J., concur.