Willie Preston PARKER, Appellant,

v.

UNITED STATES, Appellee.

No. 97–CF–308.

District of Columbia Court of Appeals.

Argued Dec. 8, 1998.

Decided May 25, 2000.

Richard Greenlee, Public Defender Service, with whom James W. Klein and Gretchen Franklin, Public Defender Service, were on the brief, for appellant.

Arthur G. Wyatt, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher; Thomas J. Tourish, Jr., and Julie A. Grohovsky, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL and RUIZ, Associate Judges, and MACK, Senior Judge.

RUIZ, Associate Judge:

Appellant, Willie Preston Parker, was indicted for second-degree child sexual abuse, D.C.Code § 22–4109 (1996), and attempted second-degree child sexual abuse, D.C.Code §§ 22–4109, –4118, stemming from two separate incidents involving two different minor boys, M.S., a twelve-year-old, and T.K., a thirteen-year-old. Following a jury trial, appellant was convicted of the first charge, but acquitted of the second. Appellant was subsequently given a sentence of three to nine years, with all but sixteen months suspended in favor of a four-year period of probation and mandatory participation in alcohol treatment and sexual counseling programs. On appeal, appellant challenges the trial court's decision to deny his motion to sever the two charges, contending that the trial court failed to conduct a full *Drew* inquiry, *see Drew v. United States,* 118 U.S.App. D.C. 11, 331 F.2d 85 (1964), before concluding that the evidence presented by the government for each charge would be mutually admissible at a separate trial on the other charge. Even assuming that the trial court had been required to consider all of the relevant *Drew* factors, however, we conclude that the court's failure to do so was harmless and affirm.

## I.

### A. Factual Background.

Thirteen-year-old T.K. testified at trial that he had been alone sitting on the living room couch in his cousin's apartment watching television when appellant walked in, sat down by the couch and took off his shirt. Appellant told T.K. that he was a good-looking kid and asked him if he was interested in meeting a girl. After T.K. said that he was, appellant turned off the light, closed the blinds and asked T.K. to pull down his pants, telling T.K., "You got to let me see your hair ... 'cause she like boys with a whole bunch of hair.'" T.K. refused to remove his pants, and when appellant began to walk towards T.K. with his hands open as if to grab him, T.K. rushed to the door, just as his mother and his cousin were returning from the store. Appellant looked out the window, saw the others, and told T.K. not to tell anybody

about what had happened. Although T.K. later related the incident to his mother and to M.S.'s father, Mark Fowler, the family decided to handle the situation internally.

M.S. testified that on April 14, 1996, about two months after the incident involving appellant and T.K.,[1] he was staying at his aunt's[2] apartment because his mother was out of town. M.S. was left alone in the apartment along with two younger children and appellant, who was watching television in another room. Sometime before midnight, M.S.'s uncle, Tyrone Fowler,[3] came in and went to sleep on the living room floor. M.S.'s aunt, Nicole, and her friend, Rodericka Cook, came home around 3:30 a.m. and went to bed soon after, Nicole in her bedroom and Rodericka on the couch in the living room with her son, one of the younger children also staying in the apartment. M.S. testified that he slept in his younger cousins' bedroom with appellant because appellant had told him that his aunt had a new couch and did not want anybody to sleep on it.

Later in the night, M.S. felt a hand turning him over, but he remained asleep. The next morning, M.S. woke up and found appellant with his hand down M.S.'s pants and holding M.S.'s penis. Appellant's hand was moving up and down, and M.S. ejaculated. At this point, M.S. became fully awake[4] and jumped out of bed and put his pants on. M.S. asked appellant, "What's wrong with you" and headed towards the living room to tell his uncle, Tyrone, and his aunt, Nicole, but was stopped by appellant, who told M.S. to keep the matter secret. M.S. ignored appellant and knocked on Nicole's door and told her what had happened. She told him to call his father. M.S. stayed in Nicole's room until the police arrived.[5]

M.S.'s testimony was corroborated by both his uncle, Tyrone, and Rodericka Cook. Tyrone testified that he woke up on the morning of April 14, 1996 and heard M.S. cry out "Ooh, ... What you trying to do, Junior [appellant]? What you trying to do?" Tyrone then heard appellant say "I ain't trying to do nothing. I ain't trying to do nothing to you," and M.S. respond: "Yes, you is, Junior, yes, you is. You had your hand down in my pants. You unbuckled my pants and you run your hand down my pants. You did, Junior." Tyrone went into the bedroom to find out what had happened and M.S. told him "Junior had his hand going down my pants." According to Tyrone, appellant "looked like, you know, he was trying to, you know, deny. He had a funny look on his face, you know." Tyrone also testified at trial that shortly after appellant had called the police, appellant had tried to walk out of the apartment, but that he had prevented appellant from leaving.[6] Though Cook could not remember what was said, she testified that she woke up on the morning of April 14 and heard M.S.

1. M.S. denied on cross-examination that he had heard about the earlier incident between appellant and T.K. prior to the April 14, 1996 incident in which he was involved. However, T.K. testified that M.S. was in the room when T.K. told his other family members about what had happened to him with appellant.

2. M.S.'s aunt, Nicole, is Mark Fowler's sister.

3. Tyrone Fowler is Mark Fowler's brother.

4. M.S. testified that when appellant realized that he had woken up, appellant handed him a washcloth and told him to clean up. However, Joseph Anderson, a Metropolitan Police Department officer who was assigned to the Mobile Crime Laboratory investigating the M.S. incident testified that no washcloth was recovered from the apartment.

5. Appellant was apparently the person who called the police.

6. Kathy Kyle, a Public Defender Service investigator, testified that she and another PDS intern had interviewed Tyrone Fowler and that he had indicated to them that he was not present on the date of the incident. On cross-examination, Tyrone denied telling the investigators that he had not been at the apartment that day, but admitted not telling them about what he eventually testified to at trial.

crying.[7]

## B. The motion to sever.

Before the trial began, appellant moved to sever the two charges against him, arguing that he would be impermissibly prejudiced by their joinder because the jury might infer criminal disposition from one offense and use it to assess appellant's culpability for the other offense. Appellant also asserted that any determination as to whether the evidence from either of the two charged offenses would be admissible under *Drew v. United States,* in a separate trial for the other charge required a pretrial evidentiary hearing.[8] Appellant specifically requested during the hearing on the severance motion that the court make a "clear and convincing" finding that appellant had committed the two offenses before ruling on the motion, as well as a separate finding that the evidence was directed to a "material and genuinely contested issue." In denying the motion, the court stated:

> [T]hose are *Drew* issues. This is a severance issue. Both counts are charged. If we get to a point where there isn't clear and convincing evidence on one or the other counts, that count will be thrown out. And if you feel you should get a mistrial, I'll address it at that point, but I don't think I should need to pre-try the case in order to find out the Government proved the charges in the indictment.

7. Appellant did not testify at trial; however, his dentist testified that he had treated appellant on April 25, 1996, about ten days after the incident, for an abscess and that appellant likely had the abscess for "some time" prior to the visit, which caused him great pain.

8. In her motion, counsel for appellant also argued that evidence of the two offenses could not be kept separate and distinct in a single trial. *See Arnold v. United States,* 511 A.2d 399, 404 (D.C.1986).

9. Appellant submitted on the evidence on the first count (involving M.S.), but argued that there had been no showing that there was an attempt to touch any precluded area with respect to the second count (involving T.K.).

Nor did the court rule on appellant's request that the court conduct a balancing test to determine whether the evidence in the cases were more probative than prejudicial, saying: "I don't need to. They're both charged here. I can't preclude her from putting on evidence of the charged crimes. It's a severance issue, not a *Drew* issue." When appellant asserted that the same procedure was applicable to the issues of severance and admissibility of other crimes evidence, the court responded: "All right. As I said, I'll address them after the evidence is put on in trial."

At the conclusion of the government's case, appellant moved for a judgment of acquittal as to both counts.[9] The court denied the motion for judgment of acquittal as to both charges, noting as to the second charge, involving T.K., that it was a close question, but that "given the case law on unusual sexual proclivity," [10] which allowed the testimony about the incident involving M.S. as probative of appellant's intent toward T.K., there was sufficient evidence to survive the motion for judgment of acquittal.[11]

Counsel for appellant then renewed her motion for severance, arguing that in light of the government's evidence, she would have presented different defenses had the cases been severed, and that the decision to join the charges therefore prejudiced her client. The court denied the motion.[12]

10. *See, e.g., Howard v. United States,* 663 A.2d 524, 528–29 (D.C.1995).

11. The court did not address the first charge (involving M.S.) in denying the motion for judgment of acquittal.

12. The following colloquy ensued between counsel and the court:

> COUNSEL: [A]t this point I think it's also clear that our—our defenses would have been different if these cases were [not] joined. It is clear at this point that the Government's evidence in the second count is far weaker than it was in the first count. And that the—the second count—
> THE COURT: The jury would have heard about [evidence about the first count]

After deliberating for about two and a half hours, the jury returned a verdict finding appellant guilty of second-degree child sexual abuse against M.S., but acquitting appellant of attempted second-degree child sexual abuse of T.K.

## II.

Appellant challenges the trial court's decision to deny his motion to sever the two charges, contending that the court was required to conduct a full *Drew* analysis before determining that the evidence presented by the government for both charges would be mutually admissible at a separate trial for the other charge. Specifically, appellant alleges that the court failed to make a separate finding that there was clear and convincing evidence of the attempted child sexual abuse charge against T.K., and that he was harmed by joinder of that charge without a prior judicial evaluation of the evidence, particularly as he obtained an acquittal on that charge. Appellant also contends that evidence of the incident involving T.K. was not directed at a material, contested issue in the case involving M.S. Finally, appellant argues that the trial court erred by failing to conduct a balancing test to determine whether the prejudicial effect of the evidence concerning the incident with T.K. far outweighed any probative value of that evidence in the context of the charge involving M.S. We do not decide whether the trial court was required to consider each of these factors, however, because, even assuming error, we conclude that the evidence pertaining to the charge of second-degree child sexual abuse involving M.S. was so overwhelming that any error by the trial court was harmless.

■■■■ "A motion for severance on the ground of prejudicial joinder is committed to the sound discretion of the trial court." *Arnold v. United States, supra* note 8, 511 A.2d at 404. This court will therefore reverse the denial of a motion to sever under Superior Court Criminal Rule 14 only upon a clear showing of an abuse of that discretion. *See Parks v. United States,* 656 A.2d 1137, 1139 (D.C.1995). To meet this burden, the defendant "must show 'the most compelling prejudice' . . . from which 'the court would be unable to afford protection' if both offenses were tried together . . . . It is not sufficient to show that the defendant would have a better chance of acquittal if the charges were tried separately." *Arnold, supra* note 8, 511 A.2d at 404 (quoting *Winestock v. United States,* 429 A.2d 519, 526–27 (D.C.1981) (citations omitted)). However, where

> joinder is based on the "similar character" of the offenses, "a motion to sever should be granted unless (1) the evidence as to each offense is separate and distinct, and thus unlikely to be amalgamated in the jury's mind into a single inculpatory mass, *or* (2) the evidence of each of the joined crimes would be admissible at the separate trial of the others."

*Bright v. United States,* 698 A.2d 450, 454 (D.C.1997) (quoting *Arnold,* 511 A.2d at 404). Under this latter "mutual admissibility" exception, the trial court may deny a motion to sever joined charges where "the joinder for trial of two crimes does not unduly increase the likelihood that the jury will infer a criminal disposition when the rules of evidence would have permitted the admission of evidence of each crime at the separate trial of the other." *Cox v. United States,* 498 A.2d 231, 237 (D.C. 1985) (citing *Drew,* 118 U.S.App. D.C. at

whether they're severed or joined. So he would have been—because of the *Drew* issue. So there—there was no confounding of defenses.
COUNSEL: Our position that's a probative—that there's a probative nature and

has a prejudicial affect [sic], and we'd renew the motion.
THE COURT: You've said all that at least five times. All right, what else? Is there any other—the motion is denied.

16, 331 F.2d at 90).[13]

The trial court in this case ruled that severance was not required because, even if severed, each of the two charged incidents would be admissible at the trial of the other. Appellant contends, however, that the trial court erred in reaching this conclusion without first following the evidentiary rules concerning the admission of "other crimes," or *Drew*, evidence.[14] Appellant further argues that any error of the trial court to properly consider the admissibility of the other crimes evidence in this case cannot be harmless, citing our recent opinion in *Woodard v. United States*, 719 A.2d 966 (D.C.1998), and arguing that the acquittal on the second count involving T.K. does not necessarily mean that his conviction for the sexual assault of M.S. was not tainted by evidence presented concerning the alleged attempted sexual assault of T.K. We disagree with appellant's second contention, and do not reach the merits of appellant's claim of error,[15]

13. Although appellant argued in his motion to sever that evidence of the two offenses could not be kept separate and distinct in a single trial, he does not make the same argument to this court; nor did the trial court base its ruling on the severance motion on the "separate and distinct" exception. It would have been difficult for the trial court to do so, given its later comments denying appellant's motion for judgment of acquittal, notably:

[C]ertainly—I think it's a close issue. And as I said, I'm denying [the] motion [for judgment of acquittal] because I think with the other evidence of intent [from the other charged incident], what we'll call *Drew* evidence, that it's clearly sufficient.

14. *Drew v. United States*, recognized the "principle of long standing in our law that evidence of one crime is inadmissible to prove *disposition* to commit crime, from which the jury may infer that the defendant committed the crime charged." *Drew*, 118 U.S.App. D.C. at 15, 331 F.2d at 89. Thus, pursuant to *Drew*, evidence of other crimes is presumptively inadmissible unless it is offered for a "substantial, legitimate purpose." *Id.* at 16, 331 F.2d at 90. Certain exceptions are recognized, and other crimes evidence may be admissible if probative of: (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan, and (5) identity of the person committing the crime. *See id.* at 16 & n. 10, 331 F.2d at 90 & n. 10. Another "exception" to the general rule of inadmissibility of evidence of other crimes is the "lustful disposition" or "unusual sexual preference"exception at issue here. *See Howard, supra* note 10, 663 A.2d at 529.

Before evidence of other offenses probative of any of the allowable issues may be admitted, a trial court is required to find:
i) that the defendant committed the other offenses by clear and convincing evidence; ii) that the evidence of the other offenses is directed to a genuine, material and contested issue in the case; iii) that the evidence is relevant to the issue beyond demonstrating the defendant's criminal propensity; and iv) that the evidence is not more prejudicial than probative.

*Flores v. United States*, 698 A.2d 474, 482 (D.C.1997) (citing *Robinson v. United States*, 623 A.2d 1234, 1238 (D.C.1993)) (citing in turn *Roper v. United States*, 564 A.2d 726, 731 (D.C.1989)). In *(William) Johnson v. United States*, we held that the relevant balancing test for the fourth factor was the one articulated in Fed.R.Evid. 403, that is, whether the prejudicial effect of the evidence "substantially" outweighs its probative value. 683 A.2d 1087, 1099 (D.C.1996) (en banc), *cert. denied*, 520 U.S. 1148, 117 S.Ct. 1323, 137 L.Ed.2d 484 (1997); *see also Flores*, 698 A.2d at 482.

15. *Compare Roper, supra* note 14, 564 A.2d at 731 (requiring in considering whether misjoinder of crimes under Super. Ct.Crim. R. 8(a) was harmless error, where defendant was acquitted of one of the charged crimes, that trial court consider all four requirements applicable to *Drew* other crimes evidence in determining whether evidence of one charged crime would be admissible in a trial on the other charged crime); *id.* at 732 n. 12 ("we do not reach the issue of what impact, if any, an acquittal would have on our analysis of whether a trial court has abused its discretion in denying severance under Rule 14"); *with Cantizano v. United States*, 614 A.2d 870, 874 (D.C.1992) (rejecting "appellant's argument that the trial court abused its discretion in failing to sever crimes properly joined under Super. Ct.Crim. R. 8(a) without first finding by clear and convincing evidence that appellant committed each assault"). *See also Wieland v. State*, 101 Md.App. 1, 643 A.2d 446, 449–50 (Md.Ct.Spec.App.1994) (noting different lines of case law in joinder and severance contexts in Maryland and commenting "[i]t is a distinction without a difference. One is simply the procedural converse of the other.... Whether a party is 1) resisting a proposed joinder or 2) seeking to extricate himself from an already existing joinder, the *same*

because we conclude that, even assuming error, the strength of the evidence supporting appellant's conviction for the second-degree child sexual abuse of M.S. rendered any error in failing to sever the charges harmless.

We pause first to recognize that "[a] proffer is not evidence at all," *Daniels v. United States*, 613 A.2d 342, 349 (D.C. 1992) (Schwelb, J. concurring), which makes the trial judge's task of determining whether proposed testimony of another crime constitutes "clear and convincing" evidence a difficult one. Accordingly, counsel for appellant appropriately renewed her motion for severance at the conclusion of the government's case after the court had the opportunity to assess the quality of the government's evidence against appellant on the offense involving T.K. At that point, had the government failed to present sufficient evidence of appellant's attempted sexual assault of T.K., the court could have concluded that the additional probative value of that evidence was substantially outweighed by its prejudicial effect, and granted the severance motion. *See (William) Johnson, supra* note 14, 683 A.2d at 1099. In addition, prior to trial, the trial court had offered appellant the option of moving for a mistrial at the appropriate time if the government had failed to present "clear and convincing" evidence on either count, an opportunity which appellant did not exercise. Both options, we believe, adequately protected the appellant's interests in avoiding the possibility we faced in *Woodard*, that the jury would be overwhelmed by strong evidence of one charge, leading

it to impermissibly convict appellant of a second charge even though the evidence of appellant's culpability of that second charge was weak. In *Woodard*, we rejected the proposition that because the appellant had been acquitted of more serious charges stemming from one incident, his convictions on the lesser charges from a second incident could not have been "tainted" by evidence relating to the first incident, where the government's evidence of the appellant's involvement in the incident for which he was ultimately convicted was "weak and circumstantial." *See* 719 A.2d at 973.

There are no similar concerns in this case where we are presented with the converse situation: appellant was convicted of the charge on which the government had strong evidence and acquitted of the charge on which the evidence was weaker. M.S.'s testimony that he woke up with appellant's hand rubbing on his penis was corroborated by Tyrone Fowler's account that he heard M.S. exclaim "Yes, you is, Junior, yes, you is. You had your hand down in my pants. You unbuckled my pants and you run your hand down my pants. You did, Junior." Tyrone Fowler also testified that when he ran into the bedroom and asked M.S. what had happened, M.S. responded, "Junior had his hand going down my pants." Rodericka Cook testified that she heard M.S. crying when she awoke that morning right before she sent Tyrone into the room to see what had occurred. Detective Fine, the officer investigating the incident, stated at trial that he took down a statement that morn-

---

principles of law control.") (emphasis added). *Compare also Conyers v. State*, 345 Md. 525, 693 A.2d 781, 793 (1997) (holding mutual admissibility satisfied in joinder/severance context if other crimes evidence "fits within one of the exceptions to the presumptive rule of exclusion," but not requiring separate "clear and convincing" finding by court), *with State v. Garland*, 191 Ariz. 213, 953 P.2d 1266, 1270 (Ariz.Ct.App.1998) (stating mutual admissibility satisfied, and, consequently, failure to sever harmless, if other crime evidence offered for a proper purpose *and* if "profferer

is able to 'prove *by clear and convincing evidence* that the prior bad acts were committed and that the defendant committed the acts'") (first emphasis added) (quoting *State v. Terrazas*, 189 Ariz. 580, 944 P.2d 1194, 1196 (1997)), *and State v. Oliver*, 133 N.J. 141, 627 A.2d 144, 149 (1993) (requiring in context of determining whether evidence of severed offenses would be admissible in separate trials that party seeking to introduce other crime evidence establish that evidence proffered for proper purpose *and* that other crime occurred by clear and convincing evidence).

ing which was in all material respects consistent with M.S.'s trial testimony. Thus, in light of the strength of the evidence presented as to appellant's sexual abuse of M.S., we are satisfied that error by the trial court, if any, in declining to consider the procedural safeguards applicable to *Drew* other crimes evidence before denying appellant's motion to sever, was harmless. *See Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

### III.

Accordingly, for the foregoing reasons, we affirm appellant's conviction.

*Affirmed.*

MACK, Senior Judge, dissenting.

"Precedent" is one thing—"outcome" another. In our courtrooms, the first describes the legal rule that judges are required to follow, and lawyers to know; the second describes the future life that a citizen accused of crime must face as dictated by his peers, or fortuitous events (including Divine intervention). It must be somewhat disconcerting, therefore, for the layman to realize that errors committed by judges and lawyers[1] can be ignored because of fortuitous events. On the facts of the instant case, therefore, I cannot agree with my colleagues in simply assuming error (on the part of the trial judge) on their way to finding that error to be "harmless" because of a jury's verdict.

To begin with, we need not "assume" error; the trial judge did not follow the precedent of the landmark decision of *Drew v. United States*[2] and its progeny. In *Drew,* a three-judge panel of our circuit court of appeals, disturbed about the natural human reaction of a jury to convict when faced with evidence of multiple

crimes, noted, "It is a principle of long standing in our law that evidence of one crime is inadmissible to prove *disposition* to commit crime, from which the jury may infer that the defendant committed the crime charged." 118 U.S.App. D.C. at 15, 331 F.2d at 89. The court in *Drew* went on to identify some purposes for which evidence of other crimes may be admitted. Our cases have spelled out four specific requirements for the admission of such evidence:

(1) there must be clear and convincing evidence that the defendant committed the other offense, *see Thompson v. United States,* 546 A.2d 414, 421 n. 11 (D.C.1988); *Ali v. United States,* 520 A.2d 306, 310 & n. 4 (D.C.1987); *United States v. Bussey,* 139 U.S.App. D.C. 268, 273, 432 F.2d 1330, 1335 (1970); (2) the other crimes evidence must be directed to a genuine, material and contested issue in the case, *Landrum v. United States,* 559 A.2d 1323, 1326 (D.C.1989); *Thompson, supra,* 546 A.2d at 420; *Graves v. United States,* 515 A.2d 1136, 1140 (D.C.1986); (3) the evidence must be logically relevant to prove this issue for a reason other than its power to demonstrate criminal propensity, *Landrum, supra,* 559 A.2d at 1326; *Ali, supra,* 520 A.2d at 310 n. 4; *Campbell v. United States,* 450 A.2d 428, 430 (D.C. 1982); and (4) the evidence must be more probative than prejudicial, *e.g., Thompson, supra,* 546 A.2d at 420; *Campbell, supra,* 450 A.2d at 430. *See generally Bartley v. United States,* 530 A.2d 692, 700–01 (D.C.1987) (Mack, J., dissenting).

*Roper v. United States,* 564 A.2d 726, 731 (D.C.1989).[3]

Since *Drew* was decided, this court has allowed evidence of other crimes to be

---

**1.** *See Woodard v. United States,* 719 A.2d 966 (D.C.1998).

**2.** 118 U.S.App. D.C. 11, 331 F.2d 85 (1964). *Drew* is binding on this court under *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971).

**3.** The division opinion in *Bartley* also noted the need to weigh the probative value of the evidence against its prejudicial effect. *See* 530 A.2d at 695.

admitted for the precise purpose proscribed by *Drew*—to prove disposition or propensity—in cases such as this one where the crimes involve "unusual sexual preference." *See Johnson v. United States*, 610 A.2d 729 (D.C.1992). Where evidence of other crimes is offered to prove propensity, and for no other purpose, the prophylactic steps outlined above are even more important, since there is no non-prejudicial use to which the jury can put the evidence of the other crime. For this reason, it was most important for the trial court, in considering appellant's motion for severance, to first determine whether there was clear and convincing evidence that appellant had committed both crimes, and second, determine whether the prejudicial impact of the evidence outweighed its probative value.

In the instant case, if the court had required a proffer from the government on the charge of attempted second degree child sexual abuse, the proffer would have indicated a lack of evidence that appellant actually attempted sexual contact with T.K. Given the lack of evidence, much less clear and convincing evidence, of attempted sexual contact, the crime could not be admissible as evidence in a trial of appellant on the other count. "The reason for requiring that there be clear and convincing evidence that the defendant in fact committed the other offense should be obvious: if someone else committed the crime, or if no crime was committed, evidence of the other offense would have no relevance—and at the same time, might seriously prejudice the defendant." *Id.*

Even if we assumed that the trial court committed error in not having found clear and convincing evidence of each offense

before sending both counts to the jury, we cannot assume that the jury's finding of guilt beyond a reasonable doubt as to the first count, and an acquittal as to the second count, rendered the trial court's error harmless. More accurately, we cannot assume that the jury's acquittal on the weaker count rendered the evidence thereof not prejudicial. The majority cites the "strength of the evidence" against appellant on the first count as rendering the trial court's error harmless. I cannot be so sure. There were inconsistencies in the record which might have caused the jurors to hesitate before convicting appellant, if not for the corroborative nature of the second count.[4] Furthermore, the government linked the two offenses in both its opening and closing arguments. For example, the prosecutor argued in closing: "Ladies and gentlemen, twice this year the defendant Willie Preston Parker, Jr., attempted to sexually touch a young boy. In February of 1996, he attempted to sexually touch 13–year–old [T.K.]. And [T.K.] ran away. On April 14, 1996, he attempted to sexually touch 12–year–old [M.S.]. [M.S.] was sleeping. He was not able to run away." *See Woodard, supra* note 1, 719 A.2d at 973 (stating, in rejecting the government's argument that trial counsel's failure to move for severance was harmless, that "during her closing, the prosecutor sought to interweave the facts of the two incidents to create a 'single inculpatory mass' "). We would be usurping the role of the jury if we were to determine that, absent the evidence on the second count, it would have convicted appellant on the first count. Thus, convinced that the trial court committed error, I cannot agree

---

4. For example, M.S. testified that after the incident, he immediately left the bedroom and went into the living room and then, without saying anything, went into Nicole's room, where he stayed until the police came. He testified that he did not yell at appellant or have a conversation with him other than saying a few words. Tyrone Fowler testified that he heard M.S. and appellant, through the closed bedroom door, talking loudly for several minutes; he then went into the bedroom and talked to M.S. and appellant. Without the evidence of the other offense, tending as it did to show appellant's propensity to commit this offense, these discrepancies might have caused the jury to question the credibility of some of the witnesses.

with the majority that the error was harmless. Accordingly, I dissent.