NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JUSTIN WADE HARWOOD, *Appellant*.

No. 1 CA-CR 22-0254
FILED 9-19-2023

Appeal from the Superior Court in Maricopa County
No. CR2019-114688-001
The Honorable Kathleen H. Mead, Judge (Retired)

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Ashley Torkelson Levine
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Cory Engle
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Anni Hill Foster joined.

---

**C A M P B E L L**, Judge:

¶1 Justin Wade Harwood appeals from his convictions and sentences for multiple counts of sexual assault and voyeurism, arguing that one charge was time-barred and that some charges should have been severed from the others. We affirm because Harwood waived these arguments in the superior-court proceedings and fails to establish fundamental, prejudicial error on appeal.

## BACKGROUND

¶2 In April 2019, a grand jury indicted Harwood for sexual assault and voyeurism perpetrated against one victim in 2008; sexual assault and voyeurism perpetrated against a second victim in 2018; and multiple instances of voyeurism perpetrated against several other victims in 2015, 2017, and 2018.

¶3 Before trial, Harwood moved to sever the 2008 counts based on their remoteness. He did not argue that those counts were time-barred. The State opposed severance, asserting that the offenses were of the same or similar character and that the evidence of the two groups of offenses would be cross-admissible in separate trials. The superior court summarily denied severance.

¶4 At trial, evidence established the following facts. Harwood and Allison[1] were engaged in an on-again, off-again sexual relationship in 2008. Late one evening, after Allison and Harwood had been drinking in the pool area at his apartment complex, Allison began feeling sick. She went to Harwood's unit and laid down on his bed in her swimsuit. At some point she lost consciousness. Her next recollection was being roused by firefighters responding to Harwood's 911 call reporting that she "blacked out." She learned from Harwood the next day that he had intercourse with her while she was unconscious. Then, some weeks later, she discovered

---

[1] We use pseudonyms to protect the victims' privacy.

videos of the encounter on the internet when she accepted a friend request from a MySpace account bearing her name. The videos showed her lying unconscious in her swimsuit top, with Harwood engaging in vaginal and anal intercourse. Allison had not consented to the intercourse, to being filmed, or to having the recording published.

¶5 Once Allison discovered the videos, she contacted law enforcement, and a detective arranged for her to make a recorded confrontation call to Harwood. In that call, Harwood admitted taking and posting the videos to MySpace. When Allison commented that the videos appeared to show him raping her, he responded "I know." He then continued to claim that she had been awake at the outset and that she later approved of him recording the events. After the call, the detective did not do any further investigation or submit the case to the prosecutor for review.

¶6 Ten years later, Harwood and his girlfriend Savannah went over to his former roommate Chelsea's house for an evening of drinking while her boyfriend was out of town. As midnight neared, Chelsea told them that she was going to bed. The couple headed in the direction of the door and Chelsea assumed they left the house together. She did not realize Harwood was still in the house. Chelsea got in bed and promptly fell asleep. In the early morning hours, she was roused from sleep by Harwood leaning over her from behind, inserting his penis in her vagina—an act to which she had not consented. He told her that he had ejaculated. She immediately got up, took a shower, and dressed. She felt disgusted, confused, and shocked, but Harwood did not leave. He started talking to Chelsea as if things were normal, telling her how much he liked her. When the conversation turned to the sexual encounter, he told her that she could call the police and tell them that he raped her.

¶7 Chelsea left for work. When she arrived, she spoke to her boss about what happened with Harwood. Her boss allowed her to go home for the day. On the way home, she called her boyfriend, who was still out of town. Once she arrived at home, she began a second phone call with her boyfriend. While she was on the phone, Harwood arrived. She told him that she was going to call the police. Harwood acted confused, left, and later removed belongings he had left at the house. A day or two later, Chelsea and her boyfriend contacted the police together. Chelsea agreed to have a

forensic examination, which revealed Harwood's sperm on her external and internal genitals.[2]

¶8        About a month later, Harwood moved into an apartment with Savannah and her roommates Kelly and Andrea. Harwood and Savannah then broke up a few months later. While collecting Harwood's things from her apartment, Savannah found his computer and some flash drives inside a wooden chest on the patio. After successfully guessing the computer's password, she saw that the desktop contained, among other things, videos of multiple women alone in bathrooms, engaged in various hygiene activities while at least partially nude. Savannah recognized herself and Harwood's ex-wife Sawyer in some of the clips. Savannah called Sawyer to tell her about the videos, and she then called the police.

¶9        A forensic examination of the computer revealed photographs and videos of many women, each labeled with victims' names or recognizable abbreviations of them. The photographs and videos included the 2008 videos of Allison and a collage containing a facial image taken from the Facebook profile of Sienna, with whom Harwood and Sawyer had resided in 2015, along with a pixelated image of a female breast that Sienna thought might be hers. There were also hidden-camera-type videos of Sienna, Chelsea, Sawyer, Savannah, Kelly, and Andrea while they were in their bathrooms and a similar video of Andrea in her living room, all of which showed the women in various states of nudity. Another video showed Harwood viewing the bathroom video of Sawyer on his phone while he was apparently masturbating.

¶10        When questioned by the police, Harwood denied wrongdoing. With respect to the videos of unconscious Allison, he stated that she was awake at the start of the encounter, had at some point in the past authorized him to continue intercourse if she passed out, and had retroactively approved of the videos. As for Chelsea, he stated that he was drunk and asleep when she initiated sex by grabbing his penis. He said that he penetrated her before realizing she was not his then-girlfriend Savannah. With respect to the hidden-camera recordings, he claimed that they were accidentally made on a surveillance device that he used to monitor his child. He denied masturbating to any of the videos.

¶11        The jury found Harwood guilty of sexual assault and voyeurism against Allison (Counts 2 and 4), sexual assault and voyeurism

---

[2]        Testimony established that there is a 120-hour (or 5-day) window to collect DNA evidence in a sexual assault investigation.

against Chelsea (Counts 1 and 3), one count of voyeurism against Savannah (Count 5), two counts of voyeurism against Andrea (Counts 6 and 7), two counts of voyeurism against Sawyer (Counts 8 and 9), one count of voyeurism against Kelly (Count 11), and one count of voyeurism against Sienna (Count 12). The court entered judgment on the verdicts and sentenced him to consecutive prison terms of 7 years for each sexual assault count, 1.5 years for the voyeurism against Allison, and probation for the remaining voyeurism offenses.

¶12         Harwood timely appealed.

## DISCUSSION

¶13         Harwood raises two arguments on appeal: (1) his conviction for voyeurism against Allison (Count 4) must be vacated as time-barred; and (2) a new trial is required because that count, along with the sexual assault charges against Allison and Chelsea (Counts 1 and 2), should have been severed from the hidden-camera-type voyeurism charges of Counts 3, 6, 7, 8, 9, 11, and 12.

### I.     Statute of Limitations

¶14         We first address Harwood's argument that Count 4, the voyeurism charge involving the videos of unconscious Allison, was time-barred.[3] Under the statute of limitations, A.R.S. § 13-107, the State has seven years "after discovery" to initiate prosecution for felonies classified

---

[3]     Voyeurism is a class 5 felony when the defendant discloses, displays, distributes, or publishes a recording of the victim made without her consent or knowledge, via a knowing invasion of her privacy for the purpose of sexual stimulation. A.R.S. § 13-1424(A), (B), (E). Such voyeurism becomes a class 4 felony when the victim is recognizable. A.R.S. § 13-1424(E). We note that here, Harwood was indicted and sentenced for voyeurism as a class 4 felony on Count 4, but the jury was not instructed on the added element required for that classification. Harwood, however, neither objected to the instruction at trial nor identified it as an issue on appeal. Further, in view of Allison's undisputed testimony that she was recognizable in the relevant recording—which was played for the jury and showed her face clearly—the omitted instruction constituted harmless error. *See State v. Garcia*, 200 Ariz. 471, 475, ¶¶ 23–24 (App. 2001) (holding that reversal is not warranted if court can say beyond a reasonable doubt that omitted jury instruction did not contribute to verdict, and affirming because undisputed evidence proved missing element).

as 2 through 6, unless the period is tolled for a reason specified by the statute. *See, e.g.,* § 13-107(D) (limitations period does not run when the accused is absent from the state).

¶15 The primary goal of the statute of limitations is to minimize the risk of erroneous convictions by ensuring that prosecutions are based on reasonably fresh—and therefore more reliable—evidence. *Taylor v. Cruikshank*, 214 Ariz. 40, 45, ¶ 21 (App. 2006). The statute's application does not turn on whether the passage of time has degraded the evidence in a particular case. *Id.* at 46, ¶ 22. Instead, the statute is strictly a time-based restriction on the State's authority, and is considered jurisdictional in Arizona, which follows the minority view on this issue. *Id.* at 42, ¶ 9. But contrary to Harwood's position, the statute implicates personal jurisdiction, not subject matter jurisdiction. *State v. Banda*, 232 Ariz. 582, 584, ¶ 9 (App. 2013); *see also State v. Jackson*, 208 Ariz. 56, 62–63, ¶¶ 20–21, 23 (App. 2004). The limitations period is not an automatic bar to prosecution, but is an affirmative defense subject to waiver and rebuttal. *Banda*, 232 Ariz. at 584–85, ¶¶ 8–9; *Jackson*, 208 Ariz. at 62–63, ¶¶ 22, 26.

¶16 Harwood had a colorable argument that Count 4 was time-barred because ten years passed between the police's initial investigation and the indictment. But Harwood never raised the limitations issue in the superior court. Though he argued before trial that Count 4 should be severed because it was remote in time, he never argued that it was time-barred. The first time defense counsel mentioned a limitations period was at sentencing, when he queried, "[W]as there any kind of statute of limitations?" and the court appropriately responded that any such issue should have been raised before trial.

¶17 On this record, we conclude that Harwood waived the limitations defense. He is not entitled to relief absent fundamental error. *See State v. Molina*, 211 Ariz. 130, 134, ¶ 15 (App. 2005) (recognizing that defendants who fail to object at trial "do not, strictly speaking, 'waive' their claims," but "forfeit the right to obtain appellate relief unless they prove that fundamental error occurred"). Reversible fundamental error is prejudicial error that goes to the foundation of the case, takes away an essential defense right, and is of such magnitude that the defendant could not possibly have received a fair trial. *State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19–20 (2005). Harwood has not shown such error here because there is no constitutional right to the limitations defense. *See Jackson*, 208 Ariz. at 63, ¶¶ 25–26. On this record, we are unable to determine whether the State could have rebutted the defense based, for example, on when prosecution

could have commenced or on tolling, and there is no indication that Harwood was prejudiced by stale evidence.

**¶18**        We conclude that Harwood is not entitled to relief on appeal on limitations grounds. We express no opinion about whether he may develop a factual record sufficient to establish a claim for relief under Arizona Rule of Criminal Procedure 32.

## II.        Joinder of Charges

**¶19**        We next address Harwood's argument that the sexual assault charges involving Allison and Chelsea (Counts 1 and 2) and the related voyeurism charge involving Allison (Count 4) should have been severed from the hidden-camera voyeurism charges.

**¶20**        To begin with, Harwood's pretrial motion for severance addressed the charges involving Allison only, and he did not re-urge severance at trial. The criminal rules specify that a defendant waives any right to severance if he does not timely move for severance before trial and renew that motion by the close of evidence. Ariz. R. Crim. P. 13.4(c). That provision, which prevents strategic sandbagging by the defense and facilitates the court's ability to reassess the propriety of joinder as the evidence is developed, is strictly enforced and precludes all but fundamental error review. *State v. Flythe*, 219 Ariz. 117, 119–20, ¶¶ 4–5, 9–10 (App. 2008).

**¶21**        We read the joinder and severance rules together to determine whether the court committed fundamental error here. *See State v. Kinkade*, 140 Ariz. 91, 93 (1984). We bear in mind that joinder is preferred because it promotes judicial economy, and that the superior court has broad discretion to deny severance absent a showing of compelling and unavoidable prejudice. *State v. Allen*, 253 Ariz. 306, 309, ¶¶ 55–56 (2022); *State v. Grannis*, 183 Ariz. 52, 58 (1995).

**¶22**        Under Arizona Rule of Criminal Procedure (Rule) 13.3(a)(1), offenses may be joined in an indictment or complaint when they are of the "same or similar character." But under Rule 13.4(b), if offenses are joined solely under Rule 13.3(a)(1), a defendant is entitled to sever the charges—as a matter of right—before the case goes to the jury "unless evidence of the other offense or offenses would be admissible if the offenses were tried separately." That exception to of-right severance recognizes that there is no prejudice in joinder if the evidence would be cross-admissible at either trial. *See State v. Stuard*, 176 Ariz. 589, 596 (1993) (judicially recognizing exception under prior version of Rule 13.4(b), which did not expressly include it).

¶23        We first address Harwood's contention that though the sexual assault charges and the related voyeurism charge were properly joined with each other, they should not have been joined with the hidden-camera voyeurism charges because they were not of the "same or similar character." *See* Ariz. R. Crim. P. 13.3(a)(1). Harwood relies on our decisions in *State v. Garland*, 191 Ariz. 213 (App. 1998), and *State v. Lee*, 189 Ariz. 590 (App. 1997). In *Garland*, we found the offenses too different to be joined when both involved the use of a gun to take property, but in one instance the defendant merely pulled out a gun and took property after the victims left, and in the other instance he held the victim at gunpoint while making demands. 191 Ariz. at 216, ¶¶ 11–12. In *Lee*, by contrast, we found two murders to be sufficiently similar when they shared many unique characteristics, and the only substantial difference was that one of the victims was stabbed in addition to being shot. 189 Ariz. at 598. But contrary to Harwood's suggestion, neither *Garland* nor *Lee* define the boundaries for what may qualify as the "same or similar character"—they merely illustrate that the inquiry is fact-specific. And here, we cannot say that the offenses were so dissimilar as to make their joinder under Rule 13.3(a)(1) fundamental error. Though the sexual-assault offenses were distinctive in that they involved physical violations of unconscious victims, they were similar to the other offenses in different ways. All the offenses involved Harwood pursuing sexual gratification from unaware, non-consenting female acquaintances while they were wholly or partially naked. And Harwood saved images or recordings of every victim on his computer under identifying labels.

¶24        We next address Harwood's argument that even assuming proper joinder under Rule 13.3(a)(1), he was entitled to of-right severance under Rule 13.4(b). We detect no fundamental error in view of Rule 13.4(b)'s cross-admissibility exception. Evidence of a defendant's other crimes may be admitted in sexual-offense cases to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," Ariz. R. Evid. 404(b)(2), or to show that he "had a character trait giving rise to an aberrant sexual propensity to commit the offense charged," Ariz. R. Evid. 404(c). Of course, admissibility is subject to the general limitation that evidence is inadmissible when its probative value is substantially outweighed by the risk of unfair prejudice or confusion. Ariz. R. Evid. 403. When used to show an aberrant sexual propensity, the court must also consider factors such as the remoteness of the other act, the similarity or dissimilarity of the other act, the strength of the evidence of the other act, the surrounding circumstances, relevant intervening events, and other similarities or dissimilarities. Ariz. R. Evid. 404(c)(1)(C). Harwood failed to demonstrate how the evidence would not have been cross-admissible in

8

separate trials to show Harwood's motive and intent (and lack of mistake or accident) or to show his aberrant sexual propensity for exploiting unaware, non-consenting female acquaintances for his sexual gratification. Thus, Harwood has not established fundamental error.

¶25      We finally address Harwood's assertion that he was entitled to severance under Rule 13.4(a) because it was "necessary to promote a fair determination of [his] guilt or innocence." We reiterate—the superior court has broad discretion to deny severance absent a showing of unfair prejudice that cannot be avoided. *Allen*, 253 Ariz. at 309, ¶¶ 55–56; *Grannis*, 183 Ariz. at 58. Unfair prejudice may be avoided when the jury is instructed to consider the counts separately and the evidence is properly presented. *State v. Tucker*, 231 Ariz. 125, 142, ¶ 43 (App. 2012); *see also State v. Johnson*, 212 Ariz. 425, 430, ¶ 13 (2006). Here, the jury was instructed to "decide each count separately on the evidence, with the law applicable to it, uninfluenced by your decision on any other count." We presume that the jury followed that instruction, *State v. Goudeau*, 239 Ariz. 421, 446, ¶ 67 (2016), which Harwood also emphasized in closing argument. Further, the record reveals substantial independent evidence to support each conviction.

¶26      Harwood claims that the State improperly argued in closing that the jury should consider the charges cumulatively. But the prosecutor merely noted—accurately—that all the offenses involved non-consenting victims, and that the jury could draw reasonable inferences about Harwood's motive and intent based on the number of videos and his masturbation to one of them. On this record, Harwood has not established prejudice from the joinder, and he is not entitled to relief based on the lack of severance.

## CONCLUSION

¶27      We affirm Harwood's convictions and sentences for the reasons set forth above.



AMY M. WOOD • Clerk of the Court
FILED: AA

9